150 P.3d 59 (2006)
STATE of Washington, Respondent,
v.
Michael Justin BROCKOB, Petitioner.
State of Washington, Respondent,
v.
Dusten Wade Gonzales, Petitioner.
State of Washington, Respondent,
v.
Jeremy Ray Cobabe, Petitioner.
No. 78571-6.
Supreme Court of Washington, En Banc.
Argued June 8, 2006.
Decided December 28, 2006.
As Amended January 26, 2007.
*62 Reed Manley Benjamin Speir, Attorney at Law, University Place, WA, Thomas Edward *63 Doyle, Attorney at Law, Hansville, WA, Patricia Anne Pethick, Attorney at Law, Tacoma, WA, Michelle Bacon Adams, Attorney at Law, Port Orchard, WA, for Petitioner.
Michelle Hyer, Pierce County Prosecutor, Tacoma, WA, James C. Powers, Thurston County Prosecuting Attorney Office, Olympia, WA, Randall Avery Sutton, Kitsap County Prosecutor's Office, Port Orchard, WA, for Respondent.
FAIRHURST, J.
¶ 1 These three appeals have been transferred to this court from the Court of Appeals, Division Two, and consolidated to determine two issues common to all three petitioners. First, whether there was independent evidence sufficient to corroborate the petitioners' incriminating statements to law enforcement officers under the corpus delicti rule. Second, whether there was sufficient evidence to support the convictions. Each case also presents other unrelated issues.
¶ 2 We conclude the independent evidence was insufficient to corroborate Michael Justin Brockob's incriminating statement under the corpus delicti rule and without Brockob's statement, there was insufficient evidence to support his conviction. We reverse Brockob's conviction and do not reach his unrelated issue.
¶ 3 We conclude the independent evidence was sufficient to corroborate Dusten Wade Gonzales' incriminating statement under the corpus delicti rule and there was sufficient evidence to support his conviction. We also conclude all but one of Gonzales' unrelated issues are without merit. We affirm Gonzales' conviction but remand to the trial court to strike the $100 felony deoxyribonucleic acid (DNA) collection fee.
¶ 4 We conclude the independent evidence was insufficient to corroborate Jeremy Ray Cobabe's incriminating statement under the corpus delicti rule but conclude there was, nevertheless, sufficient evidence to support his conviction. We also conclude Cobabe's unrelated issues are without merit. We affirm Cobabe's conviction.

I. FACTUAL HISTORY

State v. Brockob
¶ 5 In February 2004, Ryan Chamberlin and his partner, loss prevention officers (LPOs) at the Tacoma Fred Meyer store, observed Brockob pushing a shopping cart around the store and placing various items into a packing box in the shopping cart, including 24 to 30 packages of various kinds of cold medicines. As he walked around the store, Brockob removed the cold tablets from their packages and put them into his jacket pockets and slits in his jacket.[1] Brockob placed the discarded cold medicine packages on a shelf in the outdoor garden department.
¶ 6 Brockob returned to the store from the garden department, put the other items he had in his cart back, and went toward the exit doors. After he passed the exit without paying for the cold medicine, the LPOs retained and handcuffed Brockob, brought him to the store security office, and called the police.
¶ 7 Tacoma Police Officer John Fecteau responded to the LPOs' call and went to the store's security office, where the LPOs had detained Brockob. Officer Fecteau saw 15 to 20 opened packages of Sudafed[2] on the floor of the office and "a lot of Sudafed tablets" on the counter.[3] Verbatim Report of Proceedings (Brockob) (Mar. 31, 2004) (BVRP) at 17. Officer Fecteau advised Brockob of his Miranda[4] warnings, and asked Brockob if he would be willing to talk about what had *64 happened. When asked if he took the Sudafed without paying for it, Brockob replied, "Yes, I did." Id. at 21. When asked if he was going to make methamphetamine with the Sudafed, Brockob replied, "No, I wasn't going to make Methamphetamines. I was stealing it for somebody who was going to use it to make Methamphetamines." Id. Officer Fecteau took Brockob to jail and the store retained the Sudafed.
¶ 8 The State charged Brockob with one count of unlawful possession of pseudoephedrine and/or ephedrine with intent to manufacture methamphetamine under former RCW 69.50.440 (2003).[5] Officer Fecteau and LPO Chamberlin were the only witnesses who testified at Brockob's trial. The State argued that Brockob intended to manufacture methamphetamine regardless of whether he manufactured it himself or gave the Sudafed to someone else to manufacture methamphetamine. Brockob's attorney argued that because there was insufficient evidence to show how many tablets Brockob had, there was no proof of intent to manufacture methamphetaminethe only intent the State could prove was to shoplift. Brockob was convicted.
¶ 9 Brockob's attorney filed a motion for a judgment notwithstanding the verdict and argued to the trial court that the State did not present any "corpus evidence" proving Brockob's specific intent to deliver the tablets and corroborating Brockob's incriminating statement. Clerk's Papers (Brockob) (BCP) at 28; BVRP (Mar. 31, 2004) at 6. The trial court denied the motion. The trial court sentenced Brockob under the drug offender sentencing alternative, RCW 9.94A.660, to 55 months of confinement and 55 months of community custody. Brockob appealed to Division Two of the Court of Appeals, arguing insufficient evidence to support the corpus delicti, insufficient evidence to support his conviction, and violation of his due process rights for failure to preserve the physical evidence.[6]

State v. Gonzales
¶ 10 In August 2001, Officer Jim Black observed Gonzales driving a vehicle with a cracked windshield. A female passenger was in the vehicle with him. Officer Black ran a computer check on the vehicle and found that it was registered to a person named Jody Brosini and the license tabs were expired. Officer Black did not stop the vehicle immediatelyhe watched as the vehicle pulled into a gas station.
¶ 11 The female was driving when the vehicle left the gas station. Officer Black stopped the vehicle and asked both the driver and Gonzales for identification because Gonzales had been driving the vehicle earlier when Officer Black had noted the cracked windshield and expired vehicle registration. Although the female gave Officer Black a valid driver's license, Gonzales identified himself but said he did not have his license. Gonzales also told Officer Black that he did not have the registration or insurance for the vehicle yet because he was trying to buy the vehicle and had not made the changes. Officer Black ran a driver's check on both individuals and found that Gonzales had a suspended driver's license or suspended driving status.
¶ 12 Officer Black arrested Gonzales for driving with a suspended license and placed him in the back of his patrol vehicle. Officer Black searched the vehicle and seized a brown paper bag from under the front passenger seat containing three new sealed bottles of tablets containing ephedrine and seized from the backseat several loose unused coffee filters in two different sizes. He also seized one bottle of ephedrine tablets from the female companion.
¶ 13 Officer Black took Gonzales to the Olympia City Jail, advised him of his Miranda rights, which Gonzales waived, and informed Gonzales that possession of ephedrine could be a crime. Gonzales told Officer *65 Black he had purchased the ephedrine for another individual named Lee and said that Lee would use the ephedrine to make methamphetamine. He also said Lee would sell some of the methamphetamine back to him (Gonzales) and that Lee had done this before. He said he would meet Lee near a dumpster to give him the ephedrine and would return when Lee had the methamphetamine.
¶ 14 The State charged Gonzales with one count of possession of ephedrine, pseudoephedrine, or pressurized gas with intent to manufacture methamphetamine under former RCW 69.50.440 (2000) and one count of attempted manufacture of methamphetamine under RCW 69.50.407 and former RCW 69.50.401(a)(1)(ii) (1998).[7] The trial court subsequently dismissed the first count, for reasons unrelated to this appeal.
¶ 15 Before trial, Gonzales' attorney filed a motion in limine to exclude Gonzales' admissions to Officer Black, arguing that the State's other evidence did not satisfy the corpus delicti rule.[8] The trial court delayed ruling on the question until it heard testimony from Frank Boshears, a forensic scientist from the Washington State Patrol Crime Laboratory. Boshears testified that ephedrine is an "immediate precursor to methamphetamine." Verbatim Report of Proceedings (Gonzales) (June 7, 2004) at 45. He explained that coffee filters are used to "extract[ ] out the pseudoephedrine or ephedrine . . . and then filter out the parts that don't dissolve," leaving methamphetamine in the filter. Id. at 49. Boshears added that he had rarely seen a methamphetamine lab that did not use coffee filters. Id.
¶ 16 Following Boshears' testimony, Gonzales' attorney renewed his motion to exclude Gonzales' statements to Officer Black, and the trial court denied the motion. Gonzales' attorney also moved for a continuance so he could research the effect on the case of this court's recent ruling in City of Redmond v. Moore, 151 Wash.2d 664, 91 P.3d 875 (2004).[9] The trial court denied the request but ruled that the defense could raise the issue post trial if Gonzales were convicted.
¶ 17 Gonzales' and Officer Black's testimony at trial substantially agreed regarding the traffic stop and arrest. Gonzales admitted driving the car with a suspended driver's license. Gonzales also admitted making the incriminating statements to Black; however, he claimed that the statements he made pretrial to Officer Black were lies and he had been trying to protect his female companion.
¶ 18 Gonzales was convicted of attempted manufacture of methamphetamine under RCW 69.50.407 and former RCW 69.50.401(a)(1)(ii) and sentenced to 90 days of confinement. Based on Moore, the defense *66 sought to vacate the verdict and suppress the evidence obtained from the arrest for driving with a suspended license. The State opposed the motion, arguing that probable cause to arrest is based on facts known to the officer before or at the time of the arrest, not on facts learned subsequent to the arrest. The trial court noted that Gonzales' conviction for driving while license suspended third degree, which provided the basis for his arrest in this case, is now void. Nevertheless, the trial court denied the defense's motion, ruling that Black had reasonably relied on Department of Licensing (DOL) records showing that Gonzales' license was suspended, he had probable cause to arrest, the arrest was lawful, and the search was lawful.
¶ 19 Gonzales appealed to Division Two of the Court of Appeals, arguing insufficient evidence to support the corpus delicti, insufficient evidence to support his conviction, unlawful search of the vehicle, prejudice due to trial court delay in entering written findings of fact and conclusions of law, ineffective assistance of counsel on various grounds, trial court error in admitting his statement to Officer Black as evidence of bad character, and trial court error in imposing a $100 DNA collection fee.

State v. Cobabe
¶ 20 In May 2004, Cobabe went to the home of a friend, Jeremy Whitlock. The front door of the house was open and Cobabe walked in and found William Stebelton lying on a couch. Stebelton had spent the night at the house but did not live there. Cobabe asked Stebelton to telephone Whitlock, without explaining why he wanted him to make the call, and Stebelton refused.
¶ 21 Cobabe went over to a compact disc/digital video disc (CD/DVD) player, said he was going to "make sure Whitlock was going to come down and see him at his house," and dismantled and unplugged the player. III Verbatim Report of Proceedings (Cobabe) (CVRP) at 213. Cobabe did not mention that Whitlock had given him permission to borrow the CD/DVD player; however, he acted as though it would be no problem if he took the player. Stebelton knew that Cobabe and Whitlock were friends, but Stebelton and Cobabe did not get along.
¶ 22 Cobabe started to take the CD/DVD player, but Stebelton told Cobabe that he could not leave the house with it, and the two men started to argue. As the quarrel escalated, Cobabe put the CD/DVD) player down and swung a large flashlight and some handcuffs at Stebelton. Stebelton reached behind the couch and grabbed an automatic rifle loaded with ".22 caliber assault rifle bird shot." Id. at 217. When Stebelton grabbed the gun, it accidentally went off and hit the door.
¶ 23 Cobabe backed Stebelton out of the house, while Stebelton pointed the rifle at him. The men continued to argue, attracting the attention of several other people in the area. Eventually, Stebelton shot Cobabe in the knee. A neighbor, Marlene Joslin, heard the shots and called 911. When another neighbor intervened, the confrontation broke up.
¶ 24 Cobabe was arrested two or three days after the shooting and detectives Martin Knott and John Neal came to see Cobabe in jail. After Knott advised Cobabe of his Miranda warnings, both detectives questioned him. According to Knott, Cobabe said he went to Whitlock's home to "get drugs from Jeremy Whitlock." V CVRP at 414. When asked why he was taking the CD/DVD player, Knott claims that Cobabe said, "if he took the CD player, that would ensure that Whitlock came looking for him, and he could get his drugs." Id. at 414. Knott also claims that Cobabe did not mention that Whitlock had given him permission to take the CD/DVD player.
¶ 25 Officer Neal described Cobabe's statement somewhat differently. He said Cobabe told the detectives he "figured that he had already given [Whitlock] the actual CD player, so he figured if he took the CD player or DVD player back, [Whitlock] would then come and see him for the CD player." Suppl. Clerk's Papers (Cobabe) at 137. Neal also wrote in his police report that Cobabe had taken the CD/DVD player so Whitlock would come and see him, but he did not write that the purpose was to get drugs.
*67 ¶ 26 In an amended information, the State charged Cobabe with one count of attempted robbery in the second degree and one count of unlawful possession of a firearm in the first degree.[10] Prior to trial, Cobabe's attorney moved to dismiss the robbery charge for lack of probable cause and moved to exclude Cobabe's statements to the detectives, but the judge denied both motions. Cobabe's attorney did not specifically refer to the corpus delicti rule or argue that the corpus did not support Cobabe's statements.
¶ 27 Only Stebelton testified about the events that occurred inside Whitlock's apartment between Stebelton and Cobabe. Whitlock testified that the CD/DVD player was his, that he had seen Cobabe that morning, and that he had given Cobabe permission to borrow it. The jury acquitted Cobabe of attempted unlawful possession of a firearm but found him guilty of the charge of second degree robbery. Cobabe was sentenced to 32.25 months of confinement at the Department of Corrections, followed by 18 to 36 months of community custody. Cobabe appealed to Division Two of the Court of Appeals, arguing insufficient evidence to support the corpus delicti, insufficient evidence to support his conviction, trial court error in denying his motion to compel the State to accept his stipulation, and trial court error in denying his motion to suppress evidence of threats made to a witness.

II. ISSUES
A. Issues common to all three petitioners:
1. Was the independent evidence sufficient to corroborate the petitioners' incriminating statements under the corpus delicti rule?
2. Was there sufficient evidence to support the convictions?
B. Separate issues related to Gonzales:
1. Was the warrantless search of the vehicle incident to Gonzales' arrest unlawful and should the evidence obtained as a result be suppressed?
2. Did the trial court's delay in entering written findings of fact and conclusions of law prejudice Gonzales' appeal?
3. Did Gonzales receive ineffective assistance of counsel when his attorney failed to move to suppress the evidence from the search of the vehicle on various grounds?
4. Did the trial court abuse its discretion when it admitted Gonzales' prior statement to Officer Black about his prior dealings with Lee and did Gonzales receive ineffective assistance of counsel when his attorney failed to object to admission of the statement?
5. Did the trial court err when it imposed a $100 DNA collection fee?
C. Separate issues related to Cobabe:
1. Did the trial court abuse its discretion when it denied Cobabe's motion to compel the State to accept his stipulation?
2. Did the trial court abuse its discretion when it denied Cobabe's motion to suppress evidence of threats made to a witness?

*68 III. ANALYSIS
A. Issues common to all three petitioners
1. Corpus delicti
¶ 28 Corpus delicti means the "`body of the crime'" and must be proved by evidence sufficient to support the inference that there has been a criminal act. State v. Aten, 130 Wash.2d 640, 655, 927 P.2d 210 (1996) (quoting 1 McCormick on Evidence § 145, at 227 (John W. Strong ed., 4th ed.1992)). A defendant's incriminating statement[11] alone is not sufficient to establish that a crime took place. Aten, 130 Wash.2d at 655-56, 927 P.2d 210; State v. Vangerpen, 125 Wash.2d 782, 796, 888 P.2d 1177 (1995). The State must present other independent evidence to corroborate a defendant's incriminating statement. Aten, 130 Wash.2d at 656, 927 P.2d 210. In other words, the State must present evidence independent of the incriminating statement that the crime a defendant described in the statement actually occurred.
¶ 29 In determining whether there is sufficient independent evidence under the corpus delicti rule, we review the evidence in the light most favorable to the State. Id. at 658, 927 P.2d 210. The independent evidence need not be sufficient to support a conviction, but it must provide prima facie corroboration of the crime described in a defendant's incriminating statement. Id. at 656, 927 P.2d 210. Prima facie corroboration of a defendant's incriminating statement exists if the independent evidence supports a "`logical and reasonable inference' of the facts sought to be proved." Id. at 656, 927 P.2d 210 (quoting Vangerpen, 125 Wash.2d at 796, 888 P.2d 1177).
¶ 30 Notably, we are among a minority of courts that has declined to adopt a more relaxed rule used by federal courts. Id. at 662-63, 927 P.2d 210. Under the federal rule, the State need only present independent evidence sufficient to establish that the incriminating statement is trustworthy.[12]Id. Under the Washington rule, however, the evidence must independently corroborate, or confirm, a defendant's incriminating statement.[13]Id. at 663, 927 P.2d 210.
¶ 31 In addition to corroborating a defendant's incriminating statement, the independent evidence "`must be consistent with guilt and inconsistent with a[ ] hypothesis of innocence.'" Id. at 660, 927 P.2d 210 (quoting State v. Lung, 70 Wash.2d 365, 372, 423 P.2d 72 (1967)). If the independent evidence supports "reasonable and logical inferences of both criminal agency and noncriminal cause," it is insufficient to corroborate a defendant's admission of guilt. Id.
¶ 32 The dissent misrepresents the holding in Aten and thereby completely misconstrues the rule's purpose. Dissent at 1. As a result, it misapplies the rule to both Brockob and Cobabe. We address the dissent's errors with respect to the rule first and discuss how the dissent misapplied the rule below.
¶ 33 As noted above, the corpus delicti rule requires the State to present evidence that is independent of the defendant's statement and that corroborates not just a crime but the specific crime with which the defendant has been charged. The dissent claims the purpose of the rule is only to *69 ensure that "some evidence, however slight, supports an inference that a crime was committed." Dissent at 81 (first emphasis added). But the rule is not so forgiving. The State's evidence must support an inference that the crime with which the defendant was charged was committed. This is a much higher standard than the dissent implies. It requires that the evidence support not only the inference that a crime was committed but also the inference that a particular crime was committed.
¶ 34 Accordingly, with reference to Brockob, independent evidence must support the inference that he committed the crime of possession of pseudoephedrine and/or ephedrine with the intent to manufacture methamphetamine. With reference to Gonzales, independent evidence must support the inference that he committed the crime of attempted manufacture of methamphetamine. With reference to Cobabe, independent evidence must support the inference that he committed the crime of robbery in the second degree.
¶ 35 Aten modified the rule and, in so doing, increased the State's burden. It held that if the evidence supports both a hypothesis of guilt and a hypothesis of innocence, it is insufficient to corroborate the defendant's statement. Aten, 130 Wash.2d at 660-61, 927 P.2d 210. In other words, if the State's evidence supports the reasonable inference of a criminal explanation of what caused the event and one that does not involve criminal agency, the evidence is not sufficient to corroborate the defendant's statement.
¶ 36 Given this construction of the corpus delicti rule, we now apply it to the three cases before us.
a. Brockob
¶ 37 Brockob argues that the State produced no independent evidence to corroborate his statement to Officer Fecteau that he was stealing Sudafed to sell to someone else who planned to manufacture methamphetamine. He claims that because the State did not retain the Sudafed tablets and packages he took from the Fred Meyer store, it has no independent evidence of the number of tablets taken or whether they actually contained ephedrine. He also claims that there was no independent evidence other than his statement that he was stealing the Sudafed for someone who was going to use it to make methamphetamine. In short, Brockob claims the State failed to provide any independent corroboration of his intent to manufacture methamphetamine. He asserts that possession of Sudafed proves only intent to shoplift.
¶ 38 The State responds that under the corpus delicti rule, it need only demonstrate a "logical and reasonable inference that defendant possessed the pseudoephedrine with the intent to manufacture methamphetamine." (Brockob) Br. of Resp't at 13. It claims that because it proved that Brockob not only possessed Sudafed but a large quantity of it, and he did not come into possession innocently, the logical inference was that he intended to manufacture methamphetamine.
¶ 39 One recently published Court of Appeals case, State v. Whalen, 131 Wash.App. 58, 126 P.3d 55 (2005), presented similar facts and addressed the question of what constitutes sufficient evidence of the corpus delicti for the crime of possession of pseudoephedrine or ephedrine with the intent to manufacture methamphetamine. A security guard in a Target store observed Whalen conceal in his shirt seven unopened packages of nasal decongestant containing pseudoephedrine, and upon exiting the store the security guard detained him. Id. at 60-61, 126 P.3d 55. While detained at Target, Whalen was questioned by an Olympia police officer. Id. at 61, 126 P.3d 55. Whalen explained that he was obtaining the pseudoephedrine for a third party to satisfy a marijuana debt; he did not say anything about methamphetamine. Id.
¶ 40 The Whalen court concluded that the State merely proved that Whalen intended to shoplift more pseudoephedrine than he could legally purchase at one time. Id. at 64, 126 P.3d 55. The court also pointed out that if a person possesses more than the amount that can be legally purchased at one time, the offense is only a gross misdemeanor, not a felony. Id. at 64 n. 5, 126 P.3d 55. Mere possession of pseudoephedrine did not prove *70 intentit merely indicated that the defendant was "attempting to shoplift more pseudoephedrine than he could legally purchase at one time." Id. at 64, 126 P.3d 55.
¶ 41 As stated above, the corpus delicti rule revolves around whether independent evidence corroborates the crime described in a defendant's incriminating statement. Applying that rule to the facts of this case, the State presented evidence that Brockob stole somewhere between 15 and 30 packages of Sudafed. That evidence is sufficient only to support the logical and reasonable inference that Brockob intended to steal Sudafed. Officer Fecteau testified that he knew that Sudafed is used in the manufacture of methamphetamine; however, the mere assertion that Sudafed is known to be used to manufacture methamphetamine does not necessarily lead to the logical inference that Brockob intended to do so, without more.
¶ 42 Therefore, as in Whalen, Brockob simply possessed a quantity of Sudafed. He told Officer Fecteau that he was stealing the Sudafed for someone else who was going to make methamphetamine, but the State had no independent evidence to support this statement other than Officer Fecteau's bare assertion that Sudafed is used to manufacture methamphetamine. Brockob also did not possess anything else used in the manufacturing process. It is not reasonable to infer that a person who steals between 15 and 30 packages of Sudafed intends to manufacture methamphetamine if there is no independent evidence to support such an inference. Thus, the State's independent evidence proved only that Brockob intended to steal Sudafed.
¶ 43 Contrary to the dissent's claim, our conclusion is not based on whether the State's evidence supported an inference that Brockob was innocent of committing a crime. Dissent at 81. Rather, it is based on the fact that the State's evidence was insufficient to support an inference that he committed the crime with which he was charged. In short, the State's evidence was insufficient to support the inference that Brockob intended to manufacture methamphetamineit was sufficient only to support the inference he intended to steal Sudafed.
¶ 44 The dissent further states that this is not a case where, but for the confession, there is no evidence that the crime of unlawful possession of pseudoephedrine and/or ephedrine with the intent to manufacture methamphetamine occurred. Id. In fact, this is just such a case. Absent Brockob's statement that he intended to sell Sudafed to another person who was going to manufacture methamphetamine, the State's evidence only supported the inference that he intended to steal Sudafed, a misdemeanor offense.
¶ 45 We conclude the independent evidence was insufficient to corroborate Brockob's incriminating statement. Mere possession of Sudafed is not sufficient to show intent to manufacture methamphetamine under the corpus delicti rule.
b. Gonzales
¶ 46 Gonzales argues that the State did not produce sufficient independent evidence to corroborate his statement to Officer Black that he had purchased ephedrine for Lee to make methamphetamine. He claims that mere possession of ephedrine is not sufficient to imply that he intended to manufacture methamphetamine. The State responds that it need only provide sufficient information to provide a basis for a reasonable inference that Gonzales intended to manufacture methamphetamine. It maintains that to establish the corpus delicti the independent evidence need not render the incriminating statement superfluous.[14]
¶ 47 Gonzales is incorrect that he possessed only ephedrine, and there was no other evidence connecting him with methamphetamine manufacturing. In contrast to Brockob, Gonzales also possessed coffee filters and was apparently acting in concert with another person to acquire more than the *71 legal quantity of ephedrine. This independent evidence provides the required corroboration of Gonzales' incriminating statement that did not exist in Brockob's case.
¶ 48 We conclude the independent evidence was sufficient to corroborate Gonzales' incriminating statement under the corpus delicti rule because he possessed ephedrine and coffee filters and was apparently working in concert with another person to acquire more than the legal amount of ephedrine.
c. Cobabe
¶ 49 Cobabe argues that the State did not present independent evidence of his statement that he took Whitlock's CD/DVD player to compel Whitlock to come see him. He claims the testimony shows that Stebelton did not know who owned the player, Whitlock testified that he had given Cobabe permission to take the player, Cobabe did not remove the player from Whitlock's home, and Cobabe did not use force to obtain the player.
¶ 50 The State argues it presented testimony that Cobabe went to Whitlock's apartment, tried to take the CD/DVD player, unplugged the player from the wall and television, and never told Stebelton that Whitlock had given him permission to borrow the player. Thus, the State claims it presented circumstantial evidence supporting the logical and reasonable inference that Cobabe attempted to take the CD/DVD player against the will of its owner by the use of force.
¶ 51 As noted earlier, Cobabe was charged with attempted robbery in the second degree under RCW 9A.56.210. Under that charge, the State must prove, among other things, that Cobabe intended to take property against the will of its owner. The State produced evidence that Cobabe told Stebelton that he was "going to make sure Whitlock was going to come down to see him at his house," suggesting that this evidence corroborates Cobabe's statements to the detectives. (Cobabe) Suppl. Br. of Resp't at 9-10. In contrast, Whitlock testified that he owned the CD/DVD player and he gave Cobabe permission to take it. Stebelton testified that Cobabe acted as though he assumed it was not a problem for him to take the player. Stebelton also testified that he knew that Cobabe and Whitlock were longtime friends.
¶ 52 Thus, although there was evidence presented supporting the inference that Cobabe tried to take the CD/DVD player so Whitlock would come see him, other evidence was presented supporting the inference that Cobabe had Whitlock's permission to take the player. Under the corpus delicti rule, if the independent evidence supports hypotheses of both guilt and innocence, it is insufficient to corroborate a defendant's admission of guilt. Aten, 130 Wash.2d at 660, 927 P.2d 210.
¶ 53 The dissent argues we have misapplied Aten with regard to Cobabe. Dissent at 81-82. It claims Aten held that the corpus delicti rule does not apply only if there is "no independent proof that a crime has been committed." Id. at 81. However, this is not a correct interpretation of Aten's holding.
¶ 54 Aten involved a woman who confessed to smothering an infant. Aten, 130 Wash.2d at 649-50, 927 P.2d 210. A pathologist gave disjointed testimony at trial suggesting the infant's death could have been caused by suffocation or by Sudden Infant Death Syndrome, but he also testified he could not conclude that the infant died as a result of human action. Id. at 646-47, 927 P.2d 210. The court concluded that because the totality of independent evidence did not lead to a reasonable and logical inference that the infant died as a result of criminal action, it was insufficient to establish the corpus delicti. Id. at 660, 927 P.2d 210. Aten relied heavily on a prior ruling of this court which held that "`[t]he final test [of the corpus delicti rule] is whether the facts found and the reasonable inferences from them have proved the nonexistence of any reasonable hypothesis of innocence.'" Id. at 660, 927 P.2d 210 (emphasis added) (first alteration in original) (quoting Lung, 70 Wash.2d at 371, 423 P.2d 72). In other words, if the facts suggest there is an innocent hypothesis for the events, the State's evidence is insufficient to corroborate a defendant's confession.
*72 ¶ 55 In Cobabe's case, the facts suggested an innocent hypothesis for the events because the testimony suggested Cobabe may have had permission to take the CD/DVD player. Thus, the independent evidence was insufficient to corroborate his incriminating statement.
¶ 56 We conclude the independent evidence was insufficient to corroborate Cobabe's incriminating statement under the corpus delicti rule because the independent evidence supports hypotheses of both guilt and innocence.
2. Sufficiency of the evidence
¶ 57 In a claim of insufficient evidence, a reviewing court examines whether "`any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt,'" viewing the evidence in the light most favorable to the State. State v. Hughes, 154 Wash.2d 118, 152, 110 P.3d 192 (2005) (internal quotation marks omitted) (quoting State v. Green, 94 Wash.2d 216, 221, 616 P.2d 628 (1980)), overruled on other grounds by Washington v. Recuenco, ___ U.S. ___, 126 S.Ct. 2546, 165 L.Ed.2d 466 (2006). "Determinations of credibility are for the fact finder and are not reviewable on appeal." Id. (citing State v. Camarillo, 115 Wash.2d 60, 71, 794 P.2d 850 (1990)).
a. Brockob
¶ 58 Brockob challenges the sufficiency of the evidence supporting his conviction because he claims the State failed to prove that he had the specific intent to manufacture methamphetamine. He argues that he intended only to sell the Sudafed, not to manufacture methamphetamine with it. The State responds that it need only prove that Brockob had the Sudafed in his possession and that he possessed it with the intent to manufacture methamphetamine. The State also insists that the statutory definition of the word manufacture[15] is broad enough to include the act of purchasing Sudafed and selling it to another person who plans to manufacture methamphetamine.[16]
¶ 59 Although not controlling, two Court of Appeals cases involving possession of pseudoephedrine or ephedrine with intent to manufacture methamphetamine inform our analysis on the sufficiency of evidence issue for this case. State v. Moles, 130 Wash.App. 461, 123 P.3d 132 (2005); Whalen, 131 Wash. App. 58, 126 P.3d 55.
¶ 60 In Moles, police discovered several empty blister packs, a box of Suphedrine, a full package of pseudoephedrine, two sealed packages of Contac Cold Medicine, and almost 440 assorted loose pills in a stolen vehicle. 130 Wash.App. at 463-64, 123 P.3d 132. Police also recovered coffee filters, one with methamphetamine residue, from one of the defendant's pockets. Id. at 463, 466, 123 P.3d 132. Among other things, Moles was charged with possession with intent to manufacture methamphetamine. Id. at 464, 123 P.3d 132.
¶ 61 In analyzing the facts, the Moles court initially declared that "[b]are possession of a controlled substance is not enough to support an intent to manufacture conviction; at least one additional factor, suggestive of intent, must be present." Id. at 466, 123 P.3d 132 (emphasis added) (citing State v. McPherson, 111 Wash.App. 747, 759, 46 P.3d 284 (2002)). It noted that a person acts with intent when "he acts with the objective or purpose to accomplish a result that constitutes a crime." Id. (citing RCW 9A.08.010(1)(a)). However, the court added that "[a] person who knowingly *73 plays a role in the manufacturing process can be guilty of manufacturing, even if someone else completes the process." Id. (citing State v. Davis, 117 Wash.App. 702, 708, 72 P.3d 1134 (2003)). It further stated that possession of 440 loose pills removed from their blister packs was sufficient to prove intent to manufacture methamphetamine. Id. The court concluded that two additional factors in that particular case suggested intent to manufacture, (1) coffee filters with methamphetamine residue, and (2) defendants acting in concert to purchase the maximum allowable amount of cold tablets from various stores. Id.
¶ 62 As noted earlier, Whalen involved the theft from a Target store of seven packages of nasal decongestant containing pseudoephedrine. 131 Wash.App. at 60-61, 126 P.3d 55. The court concluded that the State could prove only that Whalen intended to shoplift more than the legal amount of pseudoephedrine, pointing out that possession of more than the legal amount was merely a gross misdemeanor rather than a felony. Id. at 64 n. 5, 126 P.3d 55.
¶ 63 We find the Court of Appeals' reasoning in Moles and Whalen persuasive and find the facts here more comparable to Whalen than Moles. The record does not indicate whether Brockob took individual Sudafed tablets out of blister packs, as did the defendants in Moles. Nor does it indicate exactly how much Sudafed Brockob took because the State did not retain the Sudafed and neither LPO Chamberlin nor Officer Fecteau testified about how many Sudafed were in each package. Further, because Brockob's incriminating statement is inadmissible under the corpus delicti rule, the most we can infer from his actions is that he intended to shoplift a rather large quantity of Sudafed, as in Whalen. We may speculate that he intended to manufacture methamphetamine, but we have no evidence to support such speculation.
¶ 64 We conclude that absent Brockob's incriminating statement, no rational trier of fact would have found that the elements of the offense were proved beyond a reasonable doubt, even viewing the evidence in the light most favorable to the State. No rational jury would have found that Brockob intended to manufacture methamphetamine merely because he shoplifted some Sudafed, even though it is known to be used to manufacture methamphetamine, absent some other evidence. See Whalen, 131 Wash.App. at 64, 126 P.3d 55. While there is evidence that Brockob removed the Sudafed from the packages, he may have done so to sell them or steal them more easily. There is no indication that by removing them from the packages while in the store he intended to participate in methamphetamine manufacturing. He did not have any coffee filters or other equipment used in the manufacturing process. In short, nothing pointed to Brockob's intent to manufacture rather than merely possess Sudafed. We conclude there was insufficient evidence to support Brockob's conviction and reverse the trial court. As a result, we do not reach Brockob's unrelated issue.
b. Gonzales
¶ 65 Gonzales challenges the sufficiency of evidence supporting his conviction for attempt to manufacture methamphetamine. He argues that the State's case was merely a "pyramiding of inferences" drawn from the evidence of the tablets found in the vehicle and his incriminating statement to Officer Black. Br. of Appellant at 17. Gonzales also claims that the State failed to demonstrate the nexus between him and Lee that is required under the accomplice liability theory.
¶ 66 The State responds that a credibility determination is well within the jury's purview and argues that the circumstantial evidence presented here is deserving of the same weight as direct evidence. Moreover, the State points out that because the charge was only attempted manufacture of methamphetamine, it did not have to show that the manufacturing process was taking place at the time Black arrested Gonzales. It need only show that he was taking a substantial step toward it.
¶ 67 Four arguments favor finding that there was sufficient evidence to support Gonzales' conviction. First, the jury was at liberty to believe Gonzales' statement that he purchased the ephedrine for Lee to manufacture methamphetamine, which was properly *74 admitted under the corpus delicti rule, and disbelieve Gonzales' trial testimony that he lied to Officer Black to protect his female companion. Second, the State is correct that Gonzales need not have begun the manufacturing process to be convicted of attempted manufacture of methamphetamine. He need only have taken some step toward that process. He had coffee filters and three bottles of ephedrine,[17] both of which are known to be used in the manufacturing process. Third, at least two of the three factors cited in Moles were present. Coffee filters were found on the backseat of the vehicle, and the amount of ephedrine in the vehicle seems excessive but for the likely connection to methamphetamine manufacturing. Fourth, Gonzales and his companion were apparently acting in concert to acquire the cold tablets.
¶ 68 We conclude there was sufficient evidence to support Gonzales' conviction and affirm the trial court.
c. Cobabe
¶ 69 Cobabe argues that no rational trier of fact would find that he committed robbery in the second degree when the testimony showed that he had permission to take the CD/DVD player, that he did not remove the player from the premises, and that the use of force was unrelated to the player. He essentially argues that the State failed to prove that something was stolen.
¶ 70 The State responds that ownership exists if the victim has actual possession of the property, citing State v. Latham, 35 Wash.App. 862, 864-65, 670 P.2d 689 (1983) for this proposition. It claims Stebelton effectively owned the CD/DVD player for the purposes of the robbery charge because Stebelton was undisputedly in possession of the CD/DVD player at the time of the incident. The State also argues it proved that force was used to take the player because Cobabe swung the flashlight and handcuffs at Stebelton when Cobabe tried to take the player. Lastly, the State argues that Cobabe took substantial steps toward completing the offense by dismantling the CD/DVD player from the television and wall.
¶ 71 The jury in this case was presented with two diametrically opposed versions of the events: one that suggested an innocent explanation and one that suggested a criminal one. It chose to believe that Cobabe did not have Whitlock's permission to take the CD/DVD player, despite Whitlock's testimony to the contrary and irrespective of whether Stebelton had constructive possession of the player. Additionally, in contrast to Brockob and Gonzales, Cobabe's incriminating statement to the detectives did not add significantly to the quantum of evidence against him. Stebelton testified at length about Cobabe's actions at trial, and he testified about Cobabe's statement that he wanted to take the CD/DVD player so Whitlock would come see him. Thus, even without Cobabe's incriminating statement to the detectives, there was more than enough evidence for a rational trier of fact to conclude that Cobabe intended to take the CD/DVD player without Whitlock's prior knowledge or permission and hold it until Whitlock came to see him.
¶ 72 We conclude there was sufficient evidence to support Cobabe's conviction and affirm the trial court.
B. Separate issues related to Gonzales
1. Warrantless vehicle search incident to Gonzales' arrest
¶ 73 Gonzales challenges the validity of his arrest under former RCW 46.20.289 (1999)[18] because this court subsequently struck down that statute as unconstitutional and argues that the evidence obtained from the vehicle search incident to his arrest must *75 therefore be suppressed.[19] The State acknowledges that our ruling in Moore rendered any convictions under former RCW 46.20.289 void, but it asserts that subsequent invalidation of a statute that provided probable cause for a police officer to make an arrest does not retroactively render the arrest unlawful. The State argues that a law is presumed valid until declared invalid and police officers are obligated to enforce a law as long as it is in effect.
¶ 74 We recently determined that a police officer who arrested a person for violating RCW 46.20.342(1)(c) prior to Moore had probable cause to believe that the individual had committed a crime. State v. Potter, 156 Wash.2d 835, 843-44, 132 P.3d 1089 (2006). We concluded that "probable cause is determined at the time of arrest" and "reliable information from the DOL indicated [the defendants] were committing the crime." Id. at 844, 132 P.3d 1089.
¶ 75 Although Potter involved a different statute, the same principle applies here. Officer Black arrested Gonzales after observing him driving a vehicle with a cracked windshield because, when he verified Gonzales' name on DOL records, he found that Gonzales had a suspended driver's license. Officer Black was entitled to rely on DOL records in accordance with Potter. As in Potter, this court struck down the statute under which Gonzales' license was suspended subsequent to Gonzales' arrest. See id. at 841, 132 P.3d 1089. Nevertheless, the DOL information available to Officer Black at the time was sufficient to warrant the belief that Gonzales had committed the offense of driving with a suspended license. Officer Black's reliance on the DOL information was reasonably prudent at the time of the arrest, and he had probable cause to believe that Gonzales had committed a misdemeanor in his presence.
¶ 76 We conclude Officer Black's warrantless vehicle search incident to Gonzales' arrest was lawful and the trial court properly admitted the evidence obtained as a result of the search.
2. Trial court's delay in entering written findings of fact and conclusions of law
¶ 77 Gonzales asks this court to reverse his conviction because the trial court delayed entering written findings of fact and conclusions of law after the CrR 3.6 hearing.[20] He claims the delay hampered his ability to "properly assign error to the trial court's written findings and conclusions, and to prepare the appropriate analysis of the issues presented by the suppression hearing." (Gonzales) Br. of Appellant at 20.
¶ 78 The State argues that the written findings of fact mirror the facts that Gonzales himself alleged in his own motion to arrest judgment. It further points out that *76 the conclusions of law are almost identical to the verbal conclusions the trial court announced during the sentencing hearing, which Gonzales attended.
¶ 79 Unchallenged findings of fact are verities on appeal and an appellate court reviews only those facts to which the appellant has assigned error. State v. Hill, 123 Wash.2d 641, 647, 870 P.2d 313 (1994). An appellate court reviews whether substantial evidence supports the trial court's findings of fact and whether the findings of fact support the conclusions of law. Nordstrom Credit, Inc. v. Dep't of Revenue, 120 Wash.2d 935, 939, 845 P.2d 1331 (1993). A delay in filing findings of fact and conclusions of law is reversible only if the delay prejudiced a defendant or the findings of fact and conclusions of law were "tailored to meet the issues presented in [the defendant's] appellate brief." State v. Gaddy, 114 Wash.App. 702, 705, 60 P.3d 116 (2002), aff'd on other grounds, 152 Wash.2d 64, 93 P.3d 872 (2004).
¶ 80 Based on the parallels pointed out by the State, we fail to see how the trial court's failure to memorialize them in writing hampered Gonzales' ability to raise issues in his appeal. The written findings of fact and conclusions of law did not contain unanticipated information and do not appear to have been tailored to conform to Gonzales' brief on appeal. We conclude the trial court's delay in entering written findings of fact and conclusions of law did not prejudice Gonzales' appeal.
3. Ineffective assistance of counsel for failure to move to suppress evidence from the vehicle search
¶ 81 Gonzales claims ineffective assistance of counsel because his attorney did not move to suppress the evidence obtained in the vehicle search on three separate grounds. First, he claims his attorney should have argued that article I, section 7 of the Washington Constitution[21] provides greater protection from search and seizure than the fourth amendment to the United States Constitution[22] and the evidence discovered in the search was thereby not subject to the good faith exception to the exclusionary rule. Second, Gonzales claims his attorney should have moved to suppress the evidence obtained in the vehicle search because Officer Black immediately placed Gonzales under arrest rather than citing and releasing him. Third, Gonzales claims his attorney should have moved to suppress the evidence obtained in the vehicle search because Officer Black requested identification from him, as a vehicle passenger, for investigatory purposes in violation of State v. Rankin, 151 Wash.2d 689, 92 P.3d 202 (2004).
¶ 82 A criminal defendant who claims ineffective assistance of counsel must prove that (1) the attorney's performance was so deficient that it "fell below an objective standard of reasonableness" and (2) the attorney's deficient performance prejudiced the defendant. State v. Reichenbach, 153 Wash.2d 126, 130, 101 P.3d 80 (2004) (citing State v. Thomas, 109 Wash.2d 222, 225-26, 743 P.2d 816 (1987), which adopted the test set out in Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). There are two prongs to the Strickland test. The first prong is deferential and courts grant a "strong presumption of reasonableness" to counsel's performance. Thomas, 109 Wash.2d at 226, 743 P.2d 816. The second prong requires a showing that the deficient performance was so serious as to deprive a defendant of a fair trial. Id. 225-26. A defendant must meet both prongs to satisfy the test. Id.
a. Good faith exception under article I, section 7
¶ 83 Gonzales first claims that because article I, section 7 provides greater protection *77 against search and seizure than the Fourth Amendment and Washington courts do not recognize a good faith exception to the exclusionary rule, the evidence obtained from the vehicle must be suppressed.
¶ 84 As noted in footnote 19, Gonzales relies on State v. Nall, 117 Wash.App. 647, 72 P.3d 200 (2003) for the proposition that Washington courts do not recognize a good faith exception to the exclusionary rule. However, Nall does not support Gonzales' argument because it involved the good faith exception to the probable cause requirement. Moreover, contrary to Gonzales' claim, the State has not urged us to adopt an exception to the exclusionary rule and does not need to. The State argues only that Officer Black searched Gonzales' vehicle under a well recognized exception to the warrant requirement because the search was conducted incident to Gonzales' arrest.
¶ 85 We conclude there is no reasonable probability that the outcome of the proceeding would have been different even if Gonzales' attorney had moved to suppress the evidence obtained in the vehicle search on the grounds that Washington courts do not recognize a good faith exception to the exclusionary rule.
b. Discretion to cite and release rather than arrest
¶ 86 Gonzales next claims that his attorney erred by not arguing that Officer Black failed to use discretion to issue a citation or make a full custodial arrest for driving with a suspended license as required by former RCW 46.64.015 (1987)[23] and CrRLJ 2.1(b)(1).[24] Gonzales also asserts that Officer Black always makes full custodial arrests for driving while license suspended and always searches vehicles when he makes stops for that offense.
¶ 87 The State does not respond specifically to the ineffective assistance of counsel claim, but argues that even if the statute requires police officers to use discretion, there is no evidence that Officer Black did not use it here. It notes that he only testified that he chose to arrest in this case. Further, the State argues that various factors favored arrest over citing and releaseGonzales did not have a driver's license, he could not show he owned the car, and he did not have a valid registration.
¶ 88 A police officer has discretion to make a full custodial arrest or to issue a citation for the offense of driving while license suspended. State v. Pulfrey, 154 Wash.2d 517, 525-27, 111 P.3d 1162 (2005). If an officer has probable cause to believe a person is driving with a suspended license, he or she may place that person under custodial arrest without considering other alternatives he or she has available under the statute or the rule while conducting an investigation. Id. at 526, 111 P.3d 1162. Further, as the State notes, there is no indication in the record that Officer Black did not use discretion when he arrested Gonzales.
¶ 89 We conclude there is no reasonable probability that the outcome of the proceeding would have been different even if Gonzales' attorney had argued that Officer Black failed to use the required discretion when he arrested Gonzales for driving while license suspended.
c. Requesting identification from passenger
¶ 90 Lastly, Gonzales' claims that his attorney should have moved to suppress the evidence obtained from the vehicle search because, in violation of Rankin, Officer Black improperly requested his identification as a vehicle passenger. The State does not respond substantively to the ineffective assistance of counsel claim, but argues that Officer *78 Black had a valid investigative purpose for asking for Gonzales' identification because he had observed Gonzales driving the vehicle earlier when he noticed the cracked windshield.
¶ 91 Gonzales misapplies our decision in Rankin. In that case, law enforcement officers had not observed the passengers doing anything to invite the officers' suspicion. Rankin, 151 Wash.2d at 692-93, 92 P.3d 202. Here, Officer Black observed Gonzales driving the vehicle with a cracked windshield. When he checked the vehicle registration, he found that the registration had expired. Although Gonzales was no longer driving the vehicle when Officer Black stopped it, Gonzales had been driving the vehicle at the time Officer Black observed the infractions. In other words, Officer Black remained justified in asking for Gonzales' identification even though Gonzales was no longer driving the vehicle.
¶ 92 We conclude there is no reasonable probability that the outcome of the proceeding would have been different even if Gonzales' attorney had objected to admission of the evidence obtained from the vehicle search based on Officer Black's request for Gonzales' identification.
4. Admission of statement to Officer Black about prior dealings with Lee
¶ 93 Gonzales argues that the trial court abused its discretion in admitting his statement to Officer Black that he had previously purchased ephedrine for Lee and that he met Lee near a dumpster to acquire methamphetamine. He further contends that he received ineffective assistance of counsel because the statement was used to prove his actions conformed with prior bad acts and his attorney failed to move to suppress it at trial. He also challenges the trial court's failure to conduct the required balancing test to determine whether the evidence was being offered for an admissible purpose. State v. Smith, 106 Wash.2d 772, 776, 725 P.2d 951 (1986).
¶ 94 The State first correctly notes that defense counsel objected to the admission of the statement, explicitly citing ER 404 as the basis for the objection. That said, the State acknowledges that the trial court did not conduct the required analysis on the record but argues that the record is sufficient to provide a basis for analysis by this court. It argues that the record shows that it offered Gonzales' statement only to show his intent to aid in the methamphetamine manufacturing process, not to prove his bad character.
¶ 95 Evidence of other crimes, wrongs, or acts of a defendant is not admissible to prove the defendant's character or to show he acted in conformity with his character. ER 404(b). Such evidence is admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Id. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401. Even relevant evidence may be excluded if its "probative value is substantially outweighed by the danger of unfair prejudice." ER 403. The trial court determines whether evidence is relevant and an appellate court reviews the trial court's ruling for a "`manifest abuse of discretion.'" State v. Vreen, 143 Wash.2d 923, 932, 26 P.3d 236 (2001) (quoting State v. Luvene, 127 Wash.2d 690, 706-07, 903 P.2d 960 (1995)).
¶ 96 In determining whether the trial court abused its discretion in admitting Gonzales' statement regarding Lee, we note that Gonzales' intent was a key component of the State's case. The State's evidence relating to Gonzales' intent to manufacture methamphetamine was circumstantial. Aside from the physical evidence obtained from the search of the vehiclethe pseudoephedrine tablets and coffee filtersthe only evidence the State had that tied Gonzales to methamphetamine manufacturing was his statement about Lee to Officer Black. Thus, the statement was properly offered as evidence of intent rather than evidence of character. Regardless, as the State correctly points out later in its brief, Gonzales already admitted to being a drug user in other uncontested evidence. Any prejudice resulting from the *79 trial court's admission of his statement to Officer Black would have been marginal.
¶ 97 We conclude Gonzales' statement was relevant to show his intent to participate in the methamphetamine manufacturing process, and the trial court did not abuse its discretion in admitting the statement under ER 404(b). We also conclude Gonzales did not receive ineffective assistance of counsel because his attorney properly objected to admission of the statement under ER 404(b).
5. $100 DNA collection fee
¶ 98 Gonzales argues the State erroneously assessed him a $100 felony DNA collection fee that was not effective until after he committed his offense. He committed the offense on or about August 21, 2001 and statute imposes the fee only for felonies committed on or after July 1, 2002. RCW 43.43.7541. The State agrees. Although we affirm Gonzales' conviction, we remand with instructions to strike the $100 felony DNA collection fee from Gonzales' judgment and sentence.
C. Separate issues related to Cobabe
1. Motion to compel the State to accept Cobabe's stipulation
¶ 99 Cobabe challenges the trial court's denial of his motion to compel the State to accept his stipulation that he wanted to meet with Whitlock without mentioning the fact that the purpose of the meeting was to purchase drugs. He argues that the purpose of the meeting had nothing to do with his attempt to remove the CD/DVD player and the reference to drugs inappropriately labeled him a drug user.
¶ 100 The State counters that the purpose of the meetings explained the "urgency of [Cobabe's] behavior and ma[d]e sense of the events for the jury." (Cobabe) Suppl. Br. of Resp't at 3. It argues that the fact that drugs were involved helps to explain "why Cobabe would take someone's CD player hostage." Id. at 5. The State notes that the evidence rules permit such evidence to prove motive or intent. In any event, the State argues that even if it was error, it was harmless. It points out that the jury did not hold Cobabe's character defects against him when it acquitted him on the firearm charge.
¶ 101 The trial court has discretion to determine whether evidence is relevant and an appellate court reviews the trial court's ruling for abuse of discretion. Vreen, 143 Wash.2d at 932, 26 P.3d 236. Evidence of other bad acts is not admissible to show that a person has a bad character, but it is admissible to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." ER 404(b).
¶ 102 Here, Cobabe's intent in going to Whitlock's apartment to take the CD/DVD player was clearly at issue. It makes little sense that he would take the player just to ensure that Whitlock would pay him a visit unless he had some other compelling reason. The drug purchase provides that reason. Additionally, the fact that the jury was able to see past Cobabe's drug associations and acquit him on the firearm charge suggests that the reference to drugs, by itself, was not prejudicial.
¶ 103 We conclude the trial court did not abuse its discretion when it denied Cobabe's motion to compel the State to accept his stipulation.
2. Motion to suppress evidence of threats made to a witness
¶ 104 Cobabe also challenges the trial court's denial of his request to suppress evidence of threats against a witness where there was no evidence that Cobabe made the threats or that they related to the case.
¶ 105 An evidentiary error is not of constitutional magnitude and is prejudicial only if "`within reasonable probabilities, the outcome of the trial would have been materially affected had the error not occurred.'" State v. Bourgeois, 133 Wash.2d 389, 403, 945 P.2d 1120 (1997) (quoting State v. Tharp, 96 Wash.2d 591, 599, 637 P.2d 961 (1981)). The error is harmless if "the evidence is of minor significance in reference to the overall, overwhelming evidence as a whole." Id. (quoting Nghiem v. State, 73 Wash.App. 405, 413, 869 P.2d 1086 (1994)).
*80 ¶ 106 At issue here is Joslin's testimony that someone threatened her because she called 911 and that someone threw a rock through her window. Joslin did not identify who made the threat and did not see who threw the rock. She did not refer to a robbery. She did not refer to the CD/DVD player. Her testimony about the threat was disjointed, difficult to follow, and represented a minute part of the record. It is highly unlikely that it materially affected the outcome of Cobabe's robbery trial.
¶ 107 We conclude the trial court did not abuse its discretion when it denied Cobabe's motion to suppress the evidence of threats made to a witness because the error was harmless.

IV. CONCLUSION

State v. Brockob
¶ 108 We conclude the independent evidence was insufficient to corroborate Brockob's incriminating statement under the corpus delicti rule because possession of Sudafed alone is not sufficient to show intent to manufacture methamphetamine and without Brockob's incriminating statement there was insufficient evidence to support Brockob's conviction. We reverse Brockob's conviction and do not reach Brockob's unrelated issue. Also, we deny the State's motion to strike Brockob's statement of additional authorities.[25]

State v. Gonzales
¶ 109 We conclude the independent evidence was sufficient to corroborate Gonzales' incriminating statement under the corpus delicti rule because he possessed ephedrine and coffee filters and was apparently working in concert with another person to acquire more than the legal amount of ephedrine. We also conclude there was sufficient evidence to support Gonzales' conviction. We conclude all but one of Gonzales' unrelated issues are without merit. Officer Black's warrantless vehicle search incident to Gonzales' arrest was lawful, and the trial court properly admitted the evidence obtained in the search. The trial court's delay in entering written findings of fact and conclusions of law did not prejudice Gonzales' appeal. Gonzales' claims of ineffective assistance of counsel are groundless. Gonzales' statement about his dealings with Lee were properly admitted under ER 404(b). We affirm the trial court but remand with instructions to strike the $100 felony DNA collection fee from Gonzales' judgment and sentence.

State v. Cobabe
¶ 110 We conclude the independent evidence was insufficient to corroborate Cobabe's incriminating statement under the corpus delicti rule because the independent evidence supports hypotheses of both guilt and innocence. Nevertheless, we conclude there was sufficient evidence to support Cobabe's conviction and affirm the trial court. We conclude Cobabe's remaining issues are without merit. The trial court did not abuse its discretion when it denied Cobabe's motion to compel the State to accept his stipulation. The trial court also did not abuse its discretion when it denied Cobabe's motion to suppress the evidence of threats made to a witness because the error was harmless.
WE CONCUR: C. JOHNSON, CHAMBERS, SANDERS, OWENS, J.M. JOHNSON and BRIDGE, Justices.
MADSEN, J. (dissenting).
¶ 111 I respectfully dissent with respect to Michael Brockob's case and, although I concur in the result reached in Jeremy Cobabe's case, I disagree that his statement was improperly admitted. The purpose of the corpus delicti rule is to prevent an individual from being convicted of a crime without some indication of a crime having been committed other than the individual's "confession." To ensure that an individual is not convicted of a crime based solely on his or her confession, the corpus delicti rule requires prima facie corroboration of a defendant's incriminating *81 statement. That is, independent evidence must support a "logical and reasonable inference" of the facts sought to be proved. State v. Aten, 130 Wash.2d 640, 656, 927 P.2d 210 (1996). Unfortunately, the majority confuses evidence necessary for guilt with the slight evidence necessary for corroborating a confession.
¶ 112 Quoting Aten, the majority says that evidence is insufficient to corroborate a defendant's admission of guilt if the evidence supports hypotheses of both guilt and innocence. Majority at 67-68. But that is an incorrect interpretation of Aten and of the corpus delicti rule. The corpus delicti rule is aimed at ensuring that some evidence, however slight, supports an inference that a crime was committed. The rule is not concerned with whether the evidence might also suggest that the defendant may be innocent of committing the crime.
¶ 113 In Aten this court held that "corpus delicti is not established when independent evidence supports reasonable and logical inferences of both criminal agency and noncriminal cause." Aten, 130 Wash.2d at 660, 927 P.2d 210 (second emphasis added). Rather than focusing on guilt and innocence, the rule focuses on whether there is independent evidence of injury or loss as a result of a criminal act. State v. Smith, 115 Wash.2d 775, 781, 801 P.2d 975 (1990) (citing City of Bremerton v. Corbett, 106 Wash.2d 569, 573-74, 723 P.2d 1135 (1986)).[1] Further, "[t]he independent evidence need not be sufficient to support a conviction or even to send the case to the jury." Corbett, 106 Wash.2d at 578, 723 P.2d 1135. The underlying purpose of the corpus delicti rule is to prevent an individual from being convicted of a crime, without some independent indication that a crime was committed other than the person's statement.
¶ 114 In Aten this court held that the confession given by Ms. Aten regarding the death of a child in her care was improperly admitted because there was no independent proof that a crime had been committed; the coroner could not say whether the death of the victim was the result of a homicide or the result of natural causes. Aside from Aten's confession, no evidence existed to support a conclusion that the death was the result of criminal agency.
¶ 115 This case does not present such a circumstance. With regard to Mr. Brockob, evidence showed that Mr. Brockob stole 30 boxes of Sudafed, and a detective familiar with the manufacture of methamphetamine testified that Sudafed (pseudoephedrine) is used in the production of that substance. The question is not whether these facts suggest that Brockob is guilty or innocent of unlawful possession of pseudoephedrine and/or ephedrine with intent to manufacture methamphetamine. Rather, the question is whether independent evidence supports the inference that the crime of unlawful possession of pseudoephedrine and/or ephedrine with intent to manufacture methamphetamine has been committed. Although it is arguable that the best evidence of his intent is his statement, the additional evidence that Brockob stole a large quantity of a substance undisputedly used for the production of methamphetamine is sufficient corroboration of Brockob's confession that he stole the Sudafed for the purpose of supplying a methamphetamine producer with ingredients for manufacturing that substance. This is not a case where, but for the confession, there is no evidence that the crime of unlawful possession of pseudoephedrine and/or ephedrine with intent to manufacture methamphetamine occurred. I would affirm Brockob's conviction.
*82 ¶ 116 The majority's erroneous statement of the corpus delicti rule is most evident when comparing its holding in Brockob with its holding in Gonzales. As noted, the majority says that corpus delicti is not established if the evidence supports an inference both of guilt and of innocence. Applying its rule, the majority finds that the corpus delicti rule is satisfied in Mr. Gonzales' case. Yet, there is less evidence to implicate Mr. Gonzales of possession with intent to manufacture methamphetamine than there is in the case of Mr. Brockob. Mr. Gonzales had only three bottles of tablets containing ephedrine in a bag under the passenger seat and a few coffee filters loose on the backseat. Unlike, in Brockob, there was no indication that Gonzales stole the ephedrine tablets. Moreover, he possessed only three bottles compared to Brockob's 30 bottles. Thus, under the majority's reasoning, there is a stronger argument that Gonzales' possession of the tablets was innocent. As to the coffee filters, these were not in the bag with the ephedrine tablets and apparently were unrelated to these tablets since, unlike the tablets, the filters were in plain view, scattered on the backseat for all to see. Under the majority's test, it is difficult to understand why the statements were inadmissible in Brockob but admissible in Gonzales since the evidence in Gonzales relating to the filters is consistent with innocence, and he possessed only a few bottles of ephedrine with no evidence they were stolen.
¶ 117 With regard to Mr. Cobabe, the majority affirms the conviction for second degree robbery because it says that evidence presented at trial provided two diametrically opposed versions of events and the jury was entitled to believe the circumstantial evidence that Cobabe did not have the owner's permission to take property. I agree. However, I disagree with the majority that the existence of conflicting evidence of guilt requires the suppression of Cobabe's confession. Majority at 71. Again, the question is whether the evidence, other than the confession, supports an inference that Mr. Cobabe took the property of another. I believe it does.[2] I would hold that the evidence is sufficient to support admission of Cobabe's confession.
WE CONCUR: GERRY L. ALEXANDER, Chief Justice.
NOTES
[1] It is not clear from the record whether Brockob removed the individual tablets from the blister packs or merely removed the blister packs from the packages.
[2] We note that although LPO Chamberlin stated that he observed Brockob taking various types of cold medicines, Officer Fecteau observed only Sudafed. Therefore, we refer to the substance Brockob took as Sudafed.
[3] As with LPO Chamberlin's observations, the record is not clear whether Officer Fecteau saw loose tablets or blister packs of tablets that had merely been removed from their outer packages.
[4] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[5] At the time of Brockob's offense, former RCW 69.50.440(1) stated, "[i]t is unlawful for any person to possess ephedrine or any of its salts or isomers or salts of isomers, pseudoephedrine or any of its salts or isomers or salts of isomers, pressurized ammonia gas, or pressurized ammonia gas solution with intent to manufacture methamphetamine."
[6] As noted earlier, we do not reach Brockob's third issue because we reverse his conviction based on the first two.
[7] RCW 69.50.407 states, "[a]ny person who attempts or conspires to commit any offense defined in this chapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy."

Former RCW 69.50.401, which was in effect on the date of Gonzales' alleged offense, August, 21, 2001, stated,
(a) Except as authorized by this chapter, it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance.
(1) Any person who violates this subsection with respect to:
. . . .
(ii) methamphetamine, is guilty of a crime and upon conviction may be imprisoned for not more than ten years, or (A) fined not more than twenty-five thousand dollars if the crime involved less than two kilograms of the drug, or both such imprisonment and fine; or (B) if the crime involved two or more kilograms of the drug, then fined not more than one hundred thousand dollars for the first two kilograms and not more than fifty dollars for each gram in excess of two kilograms, or both such imprisonment and fine. Three thousand dollars of the fine may not be suspended. As collected, the first three thousand dollars of the fine must be deposited with the law enforcement agency having responsibility for cleanup of laboratories, sites, or substances used in the manufacture of the methamphetamine. The fine moneys deposited with that law enforcement agency must be used for such clean-up cost.
[8] The motion in limine stated that each of the three bottles in the brown paper bag contained 60 tablets, or 180 tablets total.
[9] In Moore, we invalidated two sections of the driver's licensing statutes, RCW 46.20.289 and .324(1) for failing to provide due process prior to suspension of a driver's license. 151 Wash.2d at 677, 91 P.3d 875. Gonzales' license was suspended under RCW 46.20.289.
[10] It appears that the charge of unlawful possession of a firearm in the first degree was based on a report by Joslin that Cobabe had a pistol in his hand during his fight with Stebelton. Joslin also testified that Cobabe had a pistol at trial. Stebelton, however, testified that Cobabe did not have a firearm and other witnesses corroborated Stebelton's testimony.

The trial record does not indicate the statute under which Cobabe was charged, but he was sentenced under RCW 9A.56.190 and .210(1). RCW 9A.56.190 states:
A person commits robbery when he unlawfully takes personal property from the person of another or in his presence against his will by the use or threatened use of immediate force, violence, or fear of injury to that person or his property or the person or property of anyone. Such force or fear must be used to obtain or retain possession of the property, or to prevent or overcome resistance to the taking; in either of which cases the degree of force is immaterial. Such taking constitutes robbery whenever it appears that, although the taking was fully completed without the knowledge of the person from whom taken, such knowledge was prevented by the use of force or fear.
RCW 9A.56.210(1) states, "[a] person is guilty of robbery in the second degree if he commits robbery."
[11] Courts use a variety of terms to describe a defendant's statement when analyzing corpus delicti claims. Aten, 130 Wash.2d at 655-57, 927 P.2d 210 (referring to "admissions," "confessions," "statements," "incriminating statements," "inculpatory statements," "exculpatory statements," and "facially neutral" statements). We refer to them uniformly as incriminating statements.
[12] The trustworthiness rule requires only that the State produce independent evidence showing that the incriminating statement is reliable. Opper v. United States, 348 U.S. 84, 92, 75 S.Ct. 158, 99 L.Ed. 101 (1954). The State may establish the elements of the crime by combining the facts of the statement with the independent evidence, and the independent evidence need not establish the corpus delicti at all. Id. In contrast, Opper describes the corroboration rule, which is used in Washington, as requiring the State to produce evidence that establishes "the whole of the corpus delicti" independent of the defendant's incriminating statement. Id.
[13] "[C]orroborate" is defined as "to provide evidence of the truth: make more certain: confirm." Webster's Third New International Dictionary 512 (2002).
[14] In essence, the State is arguing that the independent evidence need only make the incriminating statement more reliable; however this interpretation is closer to the federal "trustworthiness" standard than Washington's "corroboration" standard. Washington's rule requires the independent evidence to corroborate or confirm the crime described in a defendant's incriminating statement.
[15] RCW 69.50.101(p) defines "`manufacture'" as "the production, preparation, propagation, compounding, conversion, or processing of a controlled substance, either directly or indirectly or by extraction from substances of natural origin, or independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis, and includes any packaging or repackaging of the substance or labeling or relabeling of its container."
[16] Brockob argues that we may not rely on the statutory definition of "manufacture" because the court did not instruct the jury on that definition. However, the State correctly points out that in criminal trials the court is not required to define words that have ordinary meaning. See State v. Johnson, 119 Wash.2d 167, 173, 829 P.2d 1082 (1992). The State also notes that Brockob could have used the statutory definition below to attack the State's evidence, but did not, and unchallenged instructions become the law of the case.
[17] In contrast to Brockob, where we do not know exactly how many tablets were taken, Gonzales and his companion had at least 180 tablets between them.
[18] At the time of Gonzales' arrest, former RCW 46.20.289 required mandatory suspension of a person's driver's license without an administrative hearing if the person "failed to respond to a notice of traffic infraction, failed to appear at a requested hearing, violated a written promise to appear in court, or has failed to comply with the terms of a notice of traffic infraction or citation, other than for a notice of violation of RCW 46.55.105 or a standing, stopping, or parking violation."
[19] Gonzales also claims that by arguing that a police officer can arrest a person based on a statute later declared invalid, the State is effectively urging the court to adopt a good faith exception to the exclusionary rule in violation of the privacy rights granted under article I, section 7 of the state constitution, citing State v. Nall, 117 Wash.App. 647, 72 P.3d 200 (2003). This argument is without merit. Nall dealt with a good faith exception to the probable cause requirement, involving a warrant that should have been quashed in Oregon. Id. at 651, 72 P.3d 200. The court held that the arresting officers were bound by any information Oregon authorities knew or should have known at the time of the arrest, and because the Oregon authorities knew the warrant was invalid, the arresting officers lacked probable cause. Id. Here, in contrast, there is no question that Officer Black had probable cause at the time of the arrest. The only issue is that this court subsequently eliminated the basis for Gonzales' arrest and he seeks to have the evidence deriving from the arrest suppressed because the circumstances changed after the fact. He relies primarily on State v. White, 97 Wash.2d 92, 640 P.2d 1061 (1982) for this argument. However, as the State correctly points out, White held that police officers may rely on the presumptive validity of statutes in determining whether there is probable cause to make an arrest unless the law is "`so grossly and flagrantly unconstitutional' by virtue of a prior dispositive judicial holding that it may not serve as the basis of a valid arrest." White, 97 Wash.2d at 103, 640 P.2d 1061 (quoting Michigan v. DeFillippo, 443 U.S. 31, 38, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979)). Former RCW 46.20.289 was not grossly and flagrantly unconstitutional because no law relating to drivers license suspensions had previously been struck down.
[20] The trial court did not originally enter written findings of fact and conclusions of law after the CrR 3.6 hearing, but it subsequently entered them on March 1, 2005, after Gonzales raised the issue in his brief.
[21] Article I, section 7 of the Washington Constitution states, "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law."
[22] The fourth amendment to the United States Constitution states, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."
[23] Gonzales cites to the portion of the statute that states, "[w]henever any person is arrested for any violation of the traffic laws or regulations which is punishable as a misdemeanor or by imposition of a fine, the arresting officer may serve upon him a traffic citation and notice to appear in court." Former RCW 46.64.015.
[24] CrRLJ 2.1(b)(1) states, "[w]henever a person is arrested or could have been arrested pursuant to statute for a violation of law which is punishable as a misdemeanor or gross misdemeanor the arresting officer, or any other authorized peace officer, may serve upon the person a citation and notice to appear in court."
[25] Brockob filed a statement of additional authorities following oral argument, citing and quoting Whalen. The State moved to strike Brockob's statement of additional authorities because it had already provided the court with Whalen, and because Brockob's statement did not comply with RAP 10.8. We deny the State's motion to strike.
[1] Unreasonably, the majority criticizes the dissent's reference to "a crime." Majority at 69 (emphasis omitted). However, this reference is made in the context of describing the corpus delicti rule generally. In fact, it is the precise description from 2 Wayne R. LaFave & Austin W. Scott, Jr., Criminal Law 18 (2d ed.1986) (noting that "[p]erhaps . . . it is more accurate to say that the corpus delicti embraces the fact that a crime has been committed by someone." (second emphasis added)), quoted in State v. Smith, 115 Wash.2d at 781, 801 P.2d 975. If carefully read, it is clear that the dissent applies the correct rule and argues that the confessions here should be admitted if there is slight evidence of the crime of unlawful possession of pseudoephedrine and/or ephedrine with intent to manufacture methamphetamine in the case of Mr. Brockob and the crime of robbery in the second degree in the case of Mr. Cobabe.
[2] Despite its holding on page 71, it appears that the majority agrees as well. In its evaluation of the sufficiency of the evidence, the majority says that the evidence presented at trial provided two diametrically opposed versions of events, and the jury was entitled to believe the evidence that showed Cobabe did not have the owner's permission to take property. Majority at 74. If there was indeed such evidence, absent the confession, then it follows that the slight evidence necessary to admit the confession was also necessarily present.