233 P.3d 879 (2010)
STATE of Washington, Respondent,
v.
Mark Joseph AFANA, Petitioner.
No. 82600-5.
Supreme Court of Washington, En Banc.
Argued January 12, 2010.
Decided July 1, 2010.
*880 Dennis W. Morgan, Attorney at Law, Ritzville, WA, for Petitioner.
Andrew J. Metts, III, Mark Erik Lindsey, Spokane County Prosecutor's Office, Spokane, WA, for Respondent.
Douglas B. Klunder, Attorney at Law, Seattle, WA, amicus counsel for American Civil Liberties Union & Washington Association of Criminal Defense Lawyers.
*881 Travis Stearns, Washington Defenders Association, Gregory Charles Link, Washington Appellate Project, Seattle, WA, amicus counsel for Washington Defenders Association.
ALEXANDER, J.
¶ 1 Mark Joseph Afana asks this court to reverse a decision of the Court of Appeals in which that court reversed the trial court's suppression of drug evidence found in his car. Afana contends that the warrantless search of his car incident to the arrest of his passenger violated the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington Constitution. Because the arresting officer did not, at the time of the search, have a reasonable basis to believe that the arrestee posed a safety risk or that Afana's car contained evidence of the crime for which the arrest was made, we hold that the trial court properly suppressed the drug evidence as fruit of an unconstitutional search under article I, section 7. In reversing the Court of Appeals, we reject the State's proposed good faith exception to our exclusionary rule.

I. Facts and Procedural History
¶ 2 At 3:39 a.m. on June 13, 2007, Deputy Sheriff Miller noticed a car parked at the corner of Rimrock and Houston streets in Spokane County. Although the car was legally parked, the deputy's suspicions were aroused and, consequently, he parked behind the car and shined his spotlight on it. The light revealed two people inside the car. Miller then approached the car and asked the occupants what they were doing. The driver said they were watching a movie on his portable DVD (digital video disc) player.
¶ 3 Deputy Miller proceeded to ask both occupants for identification. The driver, Afana, gave the deputy his driver's license; the passenger, Jennifer Bergeron, gave her name. The deputy made a note of both names and handed Afana's license back to him. He then advised Afana and Bergeron that they should find some other place to watch the movie. After returning to his patrol car, Deputy Miller ran warrant checks on both names. The check disclosed that there was an existing warrant for the arrest of Bergeron for the misdemeanor offense of trespass. Because, at this point, Afana and Bergeron were beginning to drive away, the deputy turned on his emergency lights in order to stop the car.
¶ 4 After the car stopped, Miller walked to it and asked Bergeron to step out. When she complied, he placed her under arrest.[1] Deputy Miller then asked Afana to step out of the car. When he did so, Miller proceeded to search the interior of the car. The search turned up a black cloth bag behind the driver's seat with the words "`My Chemical Romance'" on the outside. Clerk's Papers (CP) at 13. The bag contained a crystalline substance that the deputy said "looked like Methamphetamine." Id.[2] Marijuana, a glass marijuana pipe, needles, and plastic scales were also found in the bag. The discovery of these items caused Deputy Miller to arrest Afana.
¶ 5 At a pretrial suppression hearing, Afana sought to suppress the items that had been found in his car, arguing that Deputy Miller's request for Bergeron's identification constituted an unlawful seizure. The trial court, citing this court's decision in State v. Brown, 154 Wash.2d 787, 117 P.3d 336 (2005), granted Afana's motion and dismissed the case, concluding that the practical effect of the suppression order was to terminate the *882 State's case.[3] The State then appealed. The Court of Appeals reversed the trial court, citing our decision in State v. O'Neill, 148 Wash.2d 564, 62 P.3d 489 (2003), in which we said that a request for identification from the driver of a legally parked car did not constitute a seizure. State v. Afana, 147 Wash. App. 843, 848, 196 P.3d 770 (2008). Afana petitioned this court for review, and we granted his petition. State v. Afana, 166 Wash.2d 1001, 208 P.3d 1123 (2009).
¶ 6 While Afana's petition for review was pending here, the United States Supreme Court issued its decision in Arizona v. Gant, ___ U.S. ___, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009). There, the Court said that "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." Id. at 1723. Upon granting review, we asked the parties to provide supplemental briefing on the effect, if any, of Gant. The Washington Defender Association, the American Civil Liberties Union, and the Washington Association of Criminal Defense Lawyers submitted briefs as amici curiae. Prior to oral argument in this case, our court held, consistent with Gant, that under article I, section 7 of our state constitution,
the search of a vehicle incident to the arrest of a recent occupant is unlawful absent a reasonable basis to believe that the arrestee poses a safety risk or that the vehicle contains evidence of the crime of arrest that could be concealed or destroyed, and that these concerns exist at the time of the search.
State v. Patton, 167 Wash.2d 379, 394-95, 219 P.3d 651 (2009).

II. Standard of Review
¶ 7 "Unchallenged findings of fact are treated as verities on appeal." State v. Buelna Valdez, 167 Wash.2d 761, 767, 224 P.3d 751 (2009) (citing State v. Gaines, 154 Wash.2d 711, 716, 116 P.3d 993 (2005)). We review questions of law de novo. Id.

III. Analysis

A. Was there authority of law for the search of Afana's car?
¶ 8 Afana contends that the search of his car incident to the arrest of his passenger violated his rights under the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington Constitution. Suppl. Br. of Pet'r at 6. He asserts, therefore, the fruits of this search were properly suppressed by the trial court. "When a party claims both state and federal constitutional violations, we turn first to our state constitution." Patton, 167 Wash.2d at 385, 219 P.3d 651 (citing State v. Johnson, 128 Wash.2d 431, 443, 909 P.2d 293 (1996)). Article I, section 7 of our state constitution provides: "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." In light of this provision, we must first determine whether Deputy Miller's search constituted a disturbance of Afana's private affairs. We have long recognized a privacy interest in automobiles and their contents. Patton, 167 Wash.2d at 385, 219 P.3d 651 (citing State v. Parker, 139 Wash.2d 486, 496, 987 P.2d 73 (1999); State v. Gibbons, 118 Wash. 171, 187-88, 203 P. 390 (1922)). Thus, the search of Afana's car unquestionably constituted a disturbance of his private affairs.
¶ 9 We must next ask whether the search was justified by authority of law. The "authority of law" requirement of article I, section 7 is satisfied by a valid warrant, subject to a few jealously guarded exceptions. Id. at 386, 219 P.3d 651. It is always the State's burden to establish that such an exception applies. Id. As we have observed, Deputy Miller did not have a warrant to search Afana's car. Unless it can be shown that the search in question fell within one of the carefully drawn exceptions to the warrant requirement, we must conclude that it was made without authority of law.
*883 ¶ 10 The exception at issue here is the automobile search incident to arrest exception. This brings us to a discussion of the aforementioned decision of the United States Supreme Court in Gant and this court's decision in Patton. In Gant, the United States Supreme Court repudiated what it characterized as other courts' "broad reading" of its decision in New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). Gant, 129 S.Ct. at 1719. This decision is significant because courts around the country had been of the view that under Belton an automobile search did not run afoul of the Fourth Amendment to the United States Constitution as long as it was incident to a recent occupant's arrest, even if there was no possibility of the arrestee gaining access to the automobile at the time the search was conducted. Id. at 1718-19; see also Michigan v. Long, 463 U.S. 1032, 1049 n. 14, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983) (observing that the "`bright line'" drawn in Belton "clearly authorizes [an automobile] search whenever officers effect a custodial arrest"). In Gant, the Supreme Court, seemingly reining in the reach of Belton, held that under the Fourth Amendment "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." Gant, 129 S.Ct. at 1723 (emphasis added).
¶ 11 Following Gant, we ruled in Patton that article I, section 7 of the state constitution "requires no less" than the Fourth Amendment, and thus
the search of a vehicle incident to the arrest of a recent occupant is unlawful absent a reasonable basis to believe that the arrestee poses a safety risk or that the vehicle contains evidence of the crime of arrest that could be concealed or destroyed, and that these concerns exist at the time of the search.
Patton, 167 Wash.2d at 394-95, 219 P.3d 651. In Buelna Valdez, a decision handed down shortly after Patton, we reiterated that a warrantless search of an automobile is permissible under the search incident to arrest exception only "when that search is necessary to preserve officer safety or prevent destruction or concealment of evidence of the crime of arrest." Buelna Valdez, 167 Wash.2d at 777, 224 P.3d 751. In view of Gant and our recent decisions in Patton and Buelna Valdez, the question before us, further refined, is whether the search in this case was justified by a concern for the safety of the arresting officer or the concealment or destruction of evidence of the crime of arrest.
¶ 12 Nothing in the record justifies the search that took place here as incident to arrest. We say that because, while the warrant for Bergeron's arrest clearly gave Deputy Miller a valid basis for arresting her, he had no reason to believe that the vehicle in which she was a passenger contained evidence of the crime for which she was being arrested, namely, trespass. Nor did the deputy have reason to believe that the arrestee, Bergeron, posed a safety risk since she was already in custody at the time of the search.[4]
¶ 13 Furthermore, the fact that the driver of the car, Afana, was unsecured at the time of the search does not justify the search. This is so because he was not under arrest at the time the search was conducted and, as we have observed, the United States Supreme Court said in Gant that "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search." Gant, 129 S.Ct. at 1723 (emphasis added). Similarly, in Patton, we said that "the search of a vehicle incident to the arrest of a recent occupant is unlawful absent a reasonable basis to believe that the arrestee poses a safety risk." Patton, 167 Wash.2d at 394-95, 219 P.3d 651 (emphasis added). When the search that is before us took place, the only arrestee, Bergeron, was *884 in custody and posed no risk. Therefore, under Patton, the deputy had no authority of law to search Afana's vehicle because it was out of the reach of the arrestee at the time. Thus, the search violated article I, section 7 of our state constitution.

B. Should this court recognize a good faith exception to the exclusionary rule under article I, section 7?
¶ 14 The violation of Afana's right of privacy under article I, section 7 automatically implies the exclusion of the evidence seized. See State v. Boland, 115 Wash.2d 571, 582, 800 P.2d 1112 (1990). Notwithstanding that general principle, the State argues that the evidence should be admissible in Washington under a "good faith" exception to the exclusionary rule. Suppl. Br. of Resp't at 11. The United States Supreme Court has adopted such an exception to the exclusionary rule for evidence seized in violation of the Fourth Amendment.[5]See United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). The exception that court recognizes is based on the view that the exclusionary rule is intended simply to deter unlawful police action. Because the exclusionary rule "cannot be expected ... to deter objectively reasonable law enforcement activity," the United States Supreme Court has held that it should not be applied when police have acted in "good faith." Id. at 919, 104 S.Ct. 3405. By "good faith," the Court means "objectively reasonable reliance" on something that appeared to justify a search or seizure when it was made. Herring v. United States, ___ U.S. ___, 129 S.Ct. 695, 701, 172 L.Ed.2d 496 (2009).[6] Thus, the federal "good faith" exception is applicable when a search or seizure was unconstitutional but the police officer's belief that it was constitutional was objectively reasonable at the time.
¶ 15 Unlike its federal counterpart, Washington's exclusionary rule is "nearly categorical." State v. Winterstein, 167 Wash.2d 620, 636, 220 P.3d 1226 (2009). This is due to the fact that article I, section 7 of our state constitution "clearly recognizes an individual's right to privacy with no express limitations." State v. White, 97 Wash.2d 92, 110, 640 P.2d 1061 (1982). In contrast to the Fourth Amendment, article I, section 7 emphasizes "protecting personal rights rather than...curbing governmental actions." Id. This understanding of that provision of our state constitution has led us to conclude that the "right of privacy shall not be diminished by the judicial gloss of a selectively applied exclusionary remedy." Id. Thus, while our state's exclusionary rule also aims to deter unlawful police action, its paramount concern is protecting an individual's right of privacy. Therefore, if a police officer has disturbed a person's "private affairs," we do not ask whether the officer's belief that this disturbance was justified was objectively reasonable, but simply whether the officer had the requisite "authority of law." If not, any evidence seized unlawfully will be suppressed. With very few exceptions, whenever the right of privacy is violated, the remedy follows automatically. See id.
¶ 16 Our recent discussion in Winterstein, 167 Wash.2d at 633, 220 P.3d 1226, illustrates the type of exceptions to the exclusionary rule we will recognize under article I, section 7 and those we will not allow. There, the State asked us to find an "inevitable discovery" exception to the exclusionary rule under article I, section 7 as we had the independent source exception in State v. Coates, 107 Wash.2d 882, 735 P.2d 64 (1987) and State v. Gaines, 154 Wash.2d 711, 116 P.3d 993 (2005). In rejecting the State's argument, we observed in Winterstein that whereas the independent source doctrine recognizes *885 that probable cause may still exist based on legally obtained information after the illegally obtained information is excluded,[7] "[i]n contrast, the inevitable discovery doctrine is necessarily speculative and does not disregard illegally obtained evidence." Winterstein, 167 Wash.2d at 634, 220 P.3d 1226 (emphasis added). For that reason, we concluded that the inevitable discovery doctrine is "incompatible with the nearly categorical exclusionary rule under article I, section 7." Id. at 636, 220 P.3d 1226. Like inevitable discovery, the State's proposed "good faith" exception does not disregard illegally obtained evidence. Thus, on the surface, it appears similarly incompatible with Washington's nearly categorical exclusionary rule.
¶ 17 The State acknowledges the fact that our exclusionary rule is more rigid than its federal counterpart, but it argues that the "good faith" exception is essentially the same as the one we have already adopted, namely, the rule set forth in Michigan v. DeFillippo, 443 U.S. 31, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979). In that case, the United States Supreme Court held that an arrest made in "good faith reliance" on a city ordinance was valid even though the ordinance was later declared unconstitutional. As the State points out, we have recognized the DeFillippo rule in State v. Potter, 156 Wash.2d 835, 132 P.3d 1089 (2006) and State v. Brockob, 159 Wash.2d 311, 150 P.3d 59 (2006).[8] In the State's view, the only difference between DeFillippo, Potter, and Brockob and the present case is "the nature of the legal authority relied upon by the officer"i.e., preGant case law instead of a statute. Suppl. Br. of Resp't at 13.
¶ 18 In fact, the key difference between DeFillippo, Potter, and Brockob and the present case is not the nature of the legal authority relied upon by the officer, but the nature of the officer's reliance on that legal authority. Here, Deputy Miller relied on pre-Gant case law for the authority to search. In contrast, the police officers in DeFillippo, Potter, and Brockob relied on statutes that were subsequently declared unconstitutional only to the extent that those statutes contributed to the determination of probable cause, not for the authority to arrest.[9]See DeFillippo, 443 U.S. at 40, 99 S.Ct. 2627 ("The ordinance is relevant to the validity of the arrest and search only as it pertains to the `facts and circumstances' we hold constituted probable cause for arrest."); Brockob, 159 Wash.2d at 342, 150 P.3d 59; Potter, 156 Wash.2d at 842, 132 P.3d 1089. The "good faith" reliance of the police officers on those statutes was relevant to the United States Supreme Court's analysis in DeFillippo and our analysis in Potter and Brockob because of nature of the probable cause inquiry, which depends upon a consideration of the reasonableness of an arresting officer's beliefs.
¶ 19 Probable cause exists when the arresting officer is aware of facts and circumstances, based on reasonably trustworthy information, sufficient to cause a reasonable officer to believe that a suspect has committed or is committing a crime. Potter, 156 Wash.2d at 840, 132 P.3d 1089; accord DeFillippo, 443 U.S. at 37, 99 S.Ct. 2627. Thus, the validity of an arrest does not depend on whether the suspect actually committed a crime. DeFillippo, 443 U.S. at 36, 99 S.Ct. 2627. What matters is that the arrest was supported by probable causei.e., that the arresting officer was aware of facts and circumstances sufficient to cause a reasonable *886 person to believe that a crime has been committed. In other words, the validity of an arrest depends upon the objective reasonableness of the arresting officer's belief that probable cause exists. As we emphasized in Potter and Brockob, this determination is made at the time of arrest. Thus, even if the statute that contributed to the determination of probable cause by proscribing the defendant's conduct is later declared unconstitutional, a reasonable person at the time of the arrest, with knowledge of the fact of the defendant's conduct and the circumstance of the statute, would have reasonably believed that there was probable cause to make an arrest.
¶ 20 The State's analogy to the DeFillippo rule ignores the crucial role probable cause played in that case as well as Potter and Brockob. Our adoption of the DeFillippo rule under article I, section 7 did not signal a willingness to consider the reasonableness of a police officer's reliance on subsequently invalidated legal authority when determining whether the exclusionary rule should be applied, but only when determining whether probable cause existed. Indeed, we said in Brockob that the argument that we were adopting a "good faith" exception to the exclusionary rule by applying the DeFillippo rule was "without merit." Brockob, 159 Wash.2d at 341 n. 19, 150 P.3d 59. Deputy Miller's reliance on pre-Gant case law had nothing to do with probable cause. By overlooking this, the State has attempted to shift the reasonableness test built into the determination of probable cause to the question of whether the exclusionary rule is the appropriate remedy for a violation of a person's right of privacy under article I, section 7, and there it is out of place.
¶ 21 Furthermore, the State's approach leads it to overlook the most obvious distinction between this case and DeFillippo, Potter, and Brockob: the fact that the arrests in those cases, supported by probable cause, were ultimately determined to be lawful. On the other hand, the search conducted by Deputy Miller, as we have seen, was unlawful. In effect, the State asks us to make an exception to the exclusionary rule for illegally obtained evidence by analogy to cases in which the evidence was obtained legally. This we will not do. We reject the State's argument that the "good faith" exception is consistent with our past decisions, and hold that it is incompatible with the nearly categorical exclusionary rule under article I, section 7.

IV. Conclusion
¶ 22 We hold that the search of Afana's car incident to the arrest of his passenger was unconstitutional under Patton and Buelna Valdez. We also reject the State's request that we adopt a "good faith" exception to the exclusionary rule as incompatible with article I, section 7 and hold that the evidence obtained as a result of this unlawful search must be suppressed. Therefore, we need not address the issue that was determinative for the trial courti.e., whether the deputy's request for identification from Afana's passenger amounted to a seizure under article I, section 7 of the Washington Constitution.
WE CONCUR: BARBARA A. MADSEN, Chief Justice, CHARLES W. JOHNSON, RICHARD B. SANDERS, TOM CHAMBERS, SUSAN OWENS, MARY E. FAIRHURST, and DEBRA L. STEPHENS, Justices.
J.M. JOHNSON, J. (concurring).
¶ 23 I concur with Justice Alexander's majority opinion but fear that the opinion could be misconstrued as changing our view that officer and public safety concerns justify searches. I write separately to emphasize that the warrantless search of Mark Joseph Afana's vehicle incident to the arrest of his passenger clearly would have been constitutional if the arresting officer perceived a threat to his safety. The arresting officer in this case appears to have felt secure during this arrest, but officers in similar situationsinvestigating suspicious activity in a car at 3:30 a.m. in a rural areamay have reasonable suspicion that their or the public's safety is at risk. Such officers can constitutionally search the cars in question. See State v. Smith, 115 Wash.2d 775, 785, 801 P.2d 975 (1990) (officer may search for weapons in passenger compartment of vehicle if he has "`reasonable suspicion that the suspect is dangerous and may gain access to a weapon *887 in the vehicle'" (quoting State v. Williams, 102 Wash.2d 733, 738-39, 689 P.2d 1065 (1984))); State v. Kennedy, 107 Wash.2d 1, 12, 726 P.2d 445 (1986) (limited search of car permitted when necessary to ensure officer safety). The United States Supreme Court has agreed and also included the safety of persons other than the officer as a justification for searches. See Michigan v. Long, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983) (search authorized if suspicion of danger to officer or others applies to any individual involved, whether or not the individual is the arrestee).
¶ 24 Only because the arresting officer in this case reported no suspicion or fear that either Afana or his passenger was dangerous or may have obtained weapons from the car, the majority properly found the warrantless search unconstitutional under article I, section 7 of the Washington Constitution. However, if an officer reasonably perceives a safety threat, a search is lawful under the United States and Washington Constitutions.
NOTES
[1] The record says only that Bergeron was placed under arrest. Clerk's Papers (CP) at 2 ("placed her under arrest for the warrant"), 13 ("placed Bergeron under arrest for the warrant"). It does not disclose what protective measures the deputy employed, such as handcuffing and placing the arrestee in the patrol car to ensure the safe arrest of Bergeron. The suppression hearing held on September 6, 2007, addressed the legality of the deputy's request for Bergeron's identification, not the arrest and search incident to arrest. Verbatim Report of Proceedings at 7. Thus, the trial court did not make specific findings of fact regarding Bergeron's arrest, finding only that the deputy "arrested the passenger on the warrant." CP at 25.
[2] Afana told Deputy Miller that he did not have any methamphetamine in the bag. Deputy Miller tested the suspected methamphetamine with a narcotics identification kit after he had arrested Afana. It tested positive for methamphetamine.
[3] In Brown, we held that article I, section 7 of the state constitution prohibits police from requesting the name of a passenger for investigatory purposes without an articulable suspicion of criminal activity. Brown, 154 Wash.2d at 798, 117 P.3d 336.
[4] In Gant, Patton, and Buelna Valdez, the arrestee was handcuffed and placed in a patrol car prior to the challenged search. Here, the record does not reveal Bergeron's precise situation at the time of the search, only that she was "under arrest." The State has not, however, argued that Bergeron was unsecured at the time of the search or that she posed a safety risk, see Suppl. Br. of Resp't passim, and it is the State's burden to show that the automobile search incident to arrest exception applies. Patton, 167 Wash.2d at 386, 219 P.3d 651.
[5] The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV.
[6] See Herring, 129 S.Ct. at 704 (quashed arrest warrant); Arizona v. Evans, 514 U.S. 1, 14-16, 115 S.Ct. 1185, 131 L.Ed.2d 34 (1995) (quashed arrest warrant); Illinois v. Krull, 480 U.S. 340, 349-53, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987) (statute authorizing warrantless administrative searches subsequently declared unconstitutional); Leon, 468 U.S. at 922, 104 S.Ct. 3405 (search warrant ultimately found to be invalid).
[7] In Coates and Gaines, we held that a search warrant was still valid because, after the illegally obtained information was excluded, the remaining information independently established probable cause. Therefore, the evidence gathered during the search was properly admitted. Coates, 107 Wash.2d at 888-89, 735 P.2d 64; Gaines, 154 Wash.2d at 718-20, 116 P.3d 993.
[8] In White, this court rejected the DeFillippo rule under article I, section 7. That aspect of White was abrogated by Potter and Brockob.
[9] That authority was supplied by a separate statute in Potter, RCW 10.31.100, which provides: "`A police officer having probable cause to believe that a person has committed or is committing a felony shall have the authority to arrest the person without a warrant. A police officer may arrest a person without a warrant for committing a misdemeanor or gross misdemeanor only when the offense is committed in the presence of the officer.'" Potter, 156 Wash.2d at 840 n. 2, 132 P.3d 1089; cf. DeFillippo, 443 U.S. at 40, 99 S.Ct. 2627.