**NOTICE: SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion. Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision. Slip opinions can be changed by subsequent court orders. For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion. Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports. An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.** The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports. Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 82734-1-I |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | PUBLISHED OPINION |
| MOSES, SEAN ALBERT SPEEDY, | ) | |
| DOB: 04/04/1988, | ) | |
| | ) | |
| Respondent. | ) | |

BOWMAN, J. — The State appeals a trial court ruling suppressing a handgun seized by police during a search for controlled substances and drug paraphernalia authorized by a warrant. The trial court determined probable cause did not support the search warrant because our Supreme Court later voided the crime of possession of controlled substances in State v. Blake, 197 Wn.2d 170, 481 P.3d 521 (2021). The court also found the two crimes were so intertwined that it could not sever the warrant and dismissed the charge of unlawful possession of a firearm. We conclude that probable cause supported the search for controlled substances. Probable cause also supported the search for drug paraphernalia and the warrant was severable. We reverse the order dismissing the charge of unlawful possession of a firearm and remand.

Citations and pin cites are based on the Westlaw online version of the cited material.

No. 82734-1-I/2

## FACTS

Arlington Police Department officers contacted Sean Albert Speedy Moses on February 11, 2017 while investigating a suspicious SUV[1] near a known drug house.  Officer Molly Ingram first saw Moses sitting in the front passenger seat of the SUV with a backpack on the floor between his feet.  Moses told Officer Ingram that his name was "Gregory W. Moses" and that his birthdate was December 22, 1985.  She ran a records check and confirmed that was not his true name or birthdate.  When Officer Ingram returned to the SUV, she saw that someone had moved the backpack into the back seat.  Moses admitted he gave her a false name and Officer Ingram arrested him on an outstanding felony warrant.  While handcuffing Moses, Officer Ingram saw an open wound on his forearm that Moses said was from injecting heroin.

Officer Ingram continued questioning Moses and learned that he and the driver of the SUV, Thomas C. Harris, often used drugs and "mostly" smoked heroin.  When Harris got out of the SUV, Officer Ingram saw a plastic tube with burnt residue on the driver's seat, a device known as a "tooter."  Officer Ingram recognized the device as "drug paraphernalia used to smoke illegal narcotics."  She then deployed K-9 Tara, a drug detection canine officer, who alerted to the presence of drugs at both the front passenger and driver's side doors of the SUV.  Officer Ingram impounded the vehicle and applied for a warrant to search it.

---

[1] Sport-utility vehicle.

No. 82734-1-I/3

Officer Ingram submitted an affidavit in support of her request for a warrant. From this, a judge determined that probable cause existed for the crimes of "VUCSA and PDP."[2] The judge issued a warrant authorizing a search of the SUV for:

> Illegal drugs including but not limited to heroin, methamphetamine, drug paraphernalia including tin foil, smoking devices, and other items used to ingest illegal drugs, measuring devices including scales, letters or items showing ownership or occupancy of the vehicle, all locked and unlocked containers, all drug proceeds, ledgers showing drug activity.

While searching the SUV, officers found a loaded Ruger .45-caliber handgun in the backpack Officer Ingram first saw between Moses' feet. Officers also found paperwork belonging to Moses in the backpack. Because Moses had a prior felony conviction, on February 5, 2018, the State charged him with one count of unlawful possession of a firearm in the first degree, committed while on community custody. On February 27, 2020, the State added one count of criminal impersonation in the first degree, also committed while on community custody, because Moses first gave Officer Ingram a false name and birthdate.[3]

In April 2021, the defense moved to suppress the firearm evidence. Moses contended that the warrant lacked probable cause because it authorized a search for evidence of possession of controlled substances under former RCW 69.50.4013, a crime the Washington Supreme Court had recently found

---

[2] Violation of the Uniform Controlled Substances Act, chapter 69.50 RCW, and possession of drug paraphernalia, RCW 69.50.412. The affidavit stated with specificity that probable cause supported VUCSA under former RCW 69.50.4013 (2017) for unlawful possession of the controlled substances methamphetamine and heroin.

[3] The State did not charge Moses with any VUCSA crime.

3

unconstitutional in <u>Blake</u>.[4]  The State argued the Supreme Court's <u>Blake</u> decision was not germane to the sufficiency of the probable cause determination made back in 2017.  Alternatively, the State claimed that standing alone, probable cause to search for evidence of unlawful use or possession of drug paraphernalia supported the warrant.

In an oral ruling, the trial court agreed with Moses that <u>Blake</u> applied retroactively and rendered the crime of possession of a controlled substance unconstitutional and void.  And because the State could not prosecute or convict Moses for that offense, the trial court concluded it could not be proper grounds for issuing a search warrant.  The court also determined that the crimes of possession of a controlled substance and possession or use of drug paraphernalia were so "intertwined" that it could not sever the warrant's deficient parts.  The State asked the trial court to reconsider its ruling, but the court denied the motion in an order setting forth written findings of fact and conclusions of law. The trial court suppressed the firearm evidence and dismissed the charge without prejudice.[5]

The State appeals.

---

[4] 197 Wn.2d at 195.  Following the <u>Blake</u> decision on February 25, 2021, the legislature amended RCW 69.50.4013(1) to state that only when a person "knowingly" possesses a controlled substance does the possession become unlawful.  LAWS OF 2021, ch. 311, § 9.

[5] While the State believed the court erred in suppressing the gun evidence, it agreed the court should dismiss the unlawful possession of a firearm count because it no longer had sufficient admissible evidence to prove that charge.  The State also moved to dismiss the charge of criminal impersonation without prejudice so it could "appeal the Court's decision to suppress the firearm in this matter," which the court granted.

No. 82734-1-I/5

ANALYSIS

The State contends the trial court erred in suppressing the handgun officers found while searching the SUV because a lawfully issued warrant supported by probable cause authorized the search. In the alternative, the State argues that probable cause supported searching for evidence of unlawful possession or use of drug paraphernalia, which would have led police to the same firearm evidence. We agree.

We review the issuance of a search warrant for abuse of discretion, but we review probable cause determinations de novo. State v. Remboldt, 64 Wn. App. 505, 509, 827 P.2d 282 (1992); State v. Chamberlin, 161 Wn.2d 30, 40-41, 162 P.3d 389 (2007). We evaluate search warrants in a commonsense, practical manner and not in a hypertechnical sense. State v. Higgs, 177 Wn. App. 414, 426, 311 P.3d 1266 (2013).

The Fourth Amendment to the United States Constitution provides that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Similarly, article I, section 7 of the Washington Constitution provides that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law."

Probable cause supports a search warrant where the officer's affidavit sets forth facts sufficient for a reasonable person to conclude the defendant is involved in criminal activity. State v. Huft, 106 Wn.2d 206, 209, 720 P.2d 838 (1986); State v. J-R Distribs. Inc., 111 Wn.2d 764, 774, 765 P.2d 281 (1988). In

5

No. 82734-1-I/6

examining a probable cause determination, the only information we consider is what was before the issuing judicial officer. Remboldt, 64 Wn. App. at 509. And we generally resolve any doubts over the existence of probable cause in favor of issuing the search warrant. State v. Vickers, 148 Wn.2d 91, 108-09, 59 P.3d 58 (2002).

Probable Cause Determination for Crime Later Declared Invalid

Moses contends that our Supreme Court's 2021 decision in Blake, which declared the portion of former RCW 69.50.4013 criminalizing the simple possession of a controlled substance as unconstitutional, usurped the determination of probable cause supporting the warrant to search for evidence of that crime in his 2017 case. But a later determination that a statute is unconstitutional does not necessarily invalidate an earlier finding of probable cause to believe that a person violated the statute. Michigan v. DeFillippo, 443 U.S. 31, 37, 99 S. Ct. 2627, 61 L. Ed. 2d 343 (1979). This is true unless the law is "so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws." Id. at 38.[6]

In DeFillippo, police arrested a man for violating a city ordinance criminalizing the refusal to produce evidence of identity when requested by an officer. 443 U.S. at 33-34. During a search incident to the arrest, officers

---

[6] Moses argues that In re Personal Restraint of Domingo-Cornelio, 196 Wn.2d 255, 474 P.3d 524 (2020), cert. denied sub nom., Washington v. Domingo-Cornelio, 141 S. Ct. 1753, 209 L. Ed. 2d 515 (2021), and City of Seattle v. Grundy, 86 Wn.2d 49, 541 P.2d 994 (1975), show that "Blake's effect on the warrant was akin to retroactive application." But neither case addressed retroactivity in the context of determining probable cause. Domingo-Cornelio addressed juvenile sentencing and concluded the defendant could raise the issue of youth on collateral review as a significant material change in the law. 196 Wn.2d at 263. And Grundy involved an appeal from conviction under a city ordinance declared unconstitutional while the matter was pending review. 86 Wn.2d at 49-50.

6

discovered illegal drugs.  Id. at 34.  DeFillippo moved to suppress the drug evidence, challenging the constitutionality of the stop-and-identify ordinance.  Id. The appellate court voided the ordinance as unconstitutionally vague and suppressed the drug evidence because "both the arrest and the search were invalid."  Id.

The United States Supreme Court reversed, concluding the officers reasonably relied on "a presumptively valid ordinance" when determining whether sufficient facts existed to support probable cause that DeFillippo violated its terms.  DeFillippo, 443 U.S. at 40, 37.  That the statute later became invalid did not undermine DeFillippo's arrest because a determination of probable cause "does not depend on whether the suspect actually committed a crime."  Id. at 36. Instead, probable cause turns on whether a reasonable officer believes a person has committed or is committing a crime; "the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest."  Id.

The Court distinguished the lawfulness of a search based on probable cause from one grounded in a rule that authorizes a search under circumstances that would not otherwise satisfy traditional warrant and probable cause requirements and later declared unconstitutional.  DeFillippo, 443 U.S. at 39.  It pointed to Almeida-Sanchez v. United States, 413 U.S. 266, 268, 93 S. Ct. 2535, 37 L. Ed. 2d 596 (1973) (quoting 8 U.S.C. § 1357(a)(3)), where the Court determined that a federal regulation authorizing the United States Border Patrol to search any car without probable cause or a warrant within 100 miles of the

7

border violated the Fourth Amendment because 100 miles was not a

" 'reasonable distance' " under the federal statute.  Id.  The DeFillippo Court also

pointed to Berger v. New York, 388 U.S. 41, 54-56, 87 S. Ct. 1873, 18 L. Ed. 2d

1040 (1967), where the Court found unconstitutional an "eavesdrop" statute

authorizing searches under warrants that did not particularly describe the places

to be searched and the things to be seized.  Id.

In both Almeida-Sanchez and Berger, officers relied on statutes for

authority to search under circumstances that would not otherwise satisfy

traditional probable cause requirements.  Because the statutes authorizing the

searches were later declared invalid, the searches themselves were also

unlawful.  DeFillippo, 443 U.S. at 39; see Almeida-Sanchez, 413 U.S. at 273-75;

Berger, 388 U.S. at 63-64.  Unlike Almeida-Sanchez and Berger, the officers in

DeFillippo did not rely on the unconstitutional ordinance to authorize their arrest

and subsequent search.  DeFillippo, 443 U.S. at 39-40.  Instead, the officers

relied on traditional probable cause requirements, and the ordinance related to

only the officers' reasonable belief that DeFillippo was engaged in criminal

activity.  Id.  And because the officers acted reasonably in presuming that the

ordinance was constitutional when examining the " 'facts and circumstances' "

supporting DeFillippo's arrest, they had probable cause to support an arrest and

subsequent search.  Id. at 40.

Washington courts have since applied DeFillippo under article I, section 7

of our constitution.  First, in State v. White, 97 Wn.2d 92, 101-02, 640 P.2d 1061

(1982), our Supreme Court determined that the DeFillippo rule compelled

8

No. 82734-1-I/9

suppression of a confession following an arrest under our state's "stop-and-identify" statute. The court determined not only that the statute suffered from unconstitutional vagueness, but also that we adjudicated an "almost identical" statute as unconstitutional years before White's arrest. White, 97 Wn.2d at 102-03 (citing City of Montlake Terrace v. Stone, 6 Wn. App. 161, 492 P.2d 226 (1971)). As a result, the statute was "flagrantly unconstitutional," and police should have known it could not serve as the basis for a valid arrest. Id. at 103. The exception shaped by the Court in DeFillippo rendered the arrest unlawful. Id.

Later cases like State v. Potter, 156 Wn.2d 835, 132 P.3d 1089 (2006), and State v. Brockob, 159 Wn.2d 311, 150 P.3d 59 (2006), also applied the DeFillippo rule. In Potter, two different drivers challenged a search incident to arrest for driving while license suspended (DWLS). 156 Wn.2d at 838-39. The drivers argued officers unlawfully arrested them because a court later struck down some of the statutes that the Department of Licensing relied on to suspend their licenses. Id. at 841. Potter applied DeFillippo to conclude that "[t]he subsequent invalidation of some of the license suspension procedures does not void the probable cause that existed to arrest petitioners for the crime of DWLS." Id. at 842-43.

Brockob addressed a nearly identical question where the defendant moved to vacate the verdict and suppress evidence after our Supreme Court invalidated parts of the statutes suspending a driver's license. 159 Wn.2d at 322-23 (citing City of Redmond v. Moore, 151 Wn.2d 664, 91 P.3d 875 (2004)).

9

Brockob similarly concluded that the licensing information available to the officer at the time of arrest warranted a reasonable belief that the defendant had committed the offense of DWLS. Id. at 342. Because the officers in Potter and Brockob had sufficient probable cause to arrest the drivers, they lawfully obtained the evidence discovered during the ensuing searches. Potter, 156 Wn.2d at 843-44; Brockob, 159 Wn.2d at 342-43.

Moses argues that DeFillippo does not apply here.[7] According to Moses, this case is more like State v. Afana, 169 Wn.2d 169, 184, 179-81, 233 P.3d 879 (2010), where our Supreme Court suppressed evidence obtained from an unlawful search by rejecting the "good faith exception" to the exclusionary rule under the Fourth Amendment in favor of Washington's "nearly categorical" exclusionary rule under article I, section 7.[8] But Moses conflates determining the authority to search with applying the exclusionary rule to unlawfully obtained evidence.

In Afana, an officer searched a car driven by Afana incident to the passenger's arrest under the rule established in New York v. Belton, 453 U.S. 454, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981). 169 Wn.2d at 173-74, 177. The Belton rule authorized the search of a car without a warrant or probable cause following a passenger's arrest. 453 U.S. at 462-63. The Court later narrowed

---

[7] Moses also argues that the rule in DeFillippo applies to only arrests. Because the same probable cause requirement applies to both arrests and searches, we reject that argument.

[8] Under the "exclusionary rule," courts must suppress evidence obtained from an unlawful search. See, e.g., State v. Eserjose, 171 Wn.2d 907, 912 n.5, 918, 259 P.3d 172 (2011). Because the federal exclusionary rule aims to deter unlawful police action, the United States Supreme Court directs courts not to apply the rule when police have acted in " 'good faith.' " State v. Betancourth, 190 Wn.2d 357, 367, 413 P.3d 566 (2018) (quoting United States v. Leon, 468 U.S. 897, 918-20, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984)).

No. 82734-1-I/11

that rule in Arizona v. Gant, 556 U.S. 332, 343-44, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009), to authorize a search only if the passenger is "within reaching distance" of the car at the time of arrest or if probable cause supports the search. Because the search of Afana's car violated the new Gant rule (adopted on state constitutional grounds in State v. Patton, 167 Wn.2d 379, 394-95, 219 P.3d 651 (2009)) and the search was not otherwise supported by probable cause, the court determined the officer had no authority to search the car and suppressed the illegally obtained evidence. Afana, 169 Wn.2d at 184.

As the United States Supreme Court did in DeFillippo, our Supreme Court in Afana distinguished searches based on probable cause from those relying on a statute or rule that a court later found invalid. It described the key difference between Afana and the circumstances in DeFillippo, Potter, and Brockob as the "nature of the legal authority relied upon by the officer" instead of "the officer's reliance on that legal authority." Afana, 169 Wn.2d at 182. The court explained that the officer in Afana "relied on pre-Gant case law for the authority to search" incident to arrest, while the officers in DeFillippo, Potter, and Brockob relied on subsequently declared unconstitutional statutes "only to the extent that those statutes contributed to the determination of probable cause, not for the authority to arrest." Id.

Here, unlike the officer in Afana, Officer Ingram relied on the statute criminalizing possession of controlled substances only as much as it contributed to the facts and circumstances supporting probable cause to search. And Officer Ingram's reliance on the statute was reasonable because former RCW

11

69.50.4013(1) was presumptively valid in February 2017.[9]  Unlike in White, our courts did not adjudge former RCW 69.50.4013 invalid until four years after the search of Moses' backpack.  Indeed, our Supreme Court declared the statute valid in State v. Cleppe, 96 Wn.2d 373, 380-81, 635 P.2d 435 (1981), and again in State v. Bradshaw, 152 Wn.2d 528, 539-40, 98 P.3d 1190 (2004).  Even the trial court here recognized that Officer Ingram "had [probable cause] to request the warrant" and had "no way to know at that time that the Supreme Court would decide Blake."  Because officers searched Moses' backpack pursuant to a lawfully issued warrant supported by probable cause, the exclusionary rule did not apply.  The trial court erred in suppressing the firearm evidence.

Severability

The State argues that even if probable cause did not support the search for evidence of possession of controlled substances, the provisions of the warrant authorizing a search for evidence of unlawful possession or use of drug paraphernalia were severable and valid.  As a result, the search for drug paraphernalia would have led police to discover the same handgun.  Moses argues the trial court correctly concluded the two crimes were so inextricably intertwined that the court could not sever the warrant, leaving it overbroad and invalid.  We agree with the State.

A warrant can be overbroad because it either authorizes a search for items for which probable cause exists but fails to describe those items with particularity, or it authorizes a search for items for which probable cause does not

---

[9] Division Three of our court recently reached the same conclusion in In re Personal Restraint of Pleasant, ___ Wn. App. 2d ___, 509 P.3d 295, 305-06 (2022).

12

No. 82734-1-I/13

exist.  State v. Maddox, 116 Wn. App. 796, 805, 67 P.3d 1135 (2003), aff'd, 152

Wn.2d 499, 98 P.3d 1199 (2004)).  A warrant is also overbroad if probable cause

supports some portions of it but not other portions.  Id. at 806.  But even if a

search warrant is overbroad, "[u]nder the severability doctrine, 'infirmity of part of

a warrant requires the suppression of evidence seized pursuant to that part of the

warrant' but does not require suppression of anything seized pursuant to valid

parts of the warrant."  State v. Perrone, 119 Wn.2d 538, 556, 834 P.2d 611

(1992) (quoting United States v. Fitzgerald, 724 F.2d 633, 637 (8th Cir. 1983),

cert. denied, 466 U.S. 950, 104 S. Ct. 2151, 80 L. Ed. 2d 538 (1984)).

To be severable, there must be a "meaningful separation" between the

valid and invalid portions of the warrant, discernible from its language.  Perrone,

119 Wn.2d at 560.  That is, "there must be some logical and reasonable basis"

for dividing the warrant into parts that a court can examine independently.  Id.

We consider five factors in determining whether a court can sever invalid parts of

a warrant:

> (1) [T]he warrant must lawfully have authorized entry into the
> premises; (2) the warrant must include one or more particularly
> described items for which there is probable cause; (3) the part of
> the warrant that includes particularly described items supported by
> probable cause must be significant when compared to the warrant
> as a whole; (4) the searching officers must have found and seized
> the disputed items while executing the valid part of the warrant; and
> (5) the officers must not have conducted a general search, i.e., one
> in which they "flagrantly disregarded" the warrant's scope.

State v. Temple, 170 Wn. App. 156, 163, 285 P.3d 149 (2012) (citing Maddox,

116 Wn. App. at 807-09).

13

No. 82734-1-I/14

Here, the provisions of the search warrant relating to the unlawful possession or use of drug paraphernalia are severable from the provisions related to the unlawful possession of drugs because they meet all five Maddox requirements. First, probable cause supported the portion of the warrant authorizing a search for drug paraphernalia and lawfully authorized officers to search Moses' backpack. Second, the warrant described with particularity the items related to unlawful possession of paraphernalia, "including tin foil, smoking devices, and other items used to ingest illegal drugs." Third, the valid portion of the warrant was significant compared to the warrant as a whole. Fourth, officers discovered the handgun in Moses' backpack within the scope of their valid search for drug paraphernalia. And finally, the officers did not engage in a general search. As a result, even if the search warrant lacked probable cause to search for evidence of possession of a controlled substance, the valid portions of the warrant are severable, and officers lawfully seized the handgun.

Because (1) Blake's 2021 determination that former RCW 69.50.4013 was unconstitutional did not invalidate the 2017 finding of probable cause to believe that Moses unlawfully possessed controlled substances and (2) the former statute was not grossly and flagrantly unconstitutional at the time Officer Ingram determined probable cause existed, the trial court erroneously suppressed the firearm evidence. And even if probable cause did not support the search for evidence of unlawful possession of drugs, because probable cause supported the search for evidence of unlawful use or possession of drug paraphernalia and the search warrant was severable, officers would have lawfully found the same

14

No. 82734-1-I/15

handgun.  We reverse the order dismissing the charge of unlawful possession of

a firearm and remand.[10]

_Brennan, J_

WE CONCUR:

_Smith, A.C.J._                _Dwyer, J._

---

[10] We do not reach the State's alternative argument that Moses possessed drugs illegally under a different statute, RCW 69.50.505, giving the police probable cause to search for, seize, and forfeit drugs as "contraband."

15