[No. 40401-0-II.   Division Two.   August 9, 2011.]

THE STATE OF WASHINGTON, *Respondent*, v. BRENDA J. ZILLYETTE, *Appellant*.

*John A. Hays*, for appellant.

*H. Steward Menefee, Prosecuting Attorney*, and *Gerald R. Fuller, Deputy*, for respondent.

¶1 ARMSTRONG, J. — Brenda Zillyette (Zillyette) appeals her conviction for controlled substance homicide for the death of Austin Burrows, arguing that (1) the State failed to prove the corpus delicti of the crime by failing to provide sufficient independent proof that she delivered the drugs Burrows died from and (2) the State failed to allege every element of the crime in the information. Finding no reversible error, we affirm.

## FACTS

¶2 On April 1, 2009, Rick Green found his son, Burrows, dead in his bedroom. Blood testing showed that Burrows had died from an overdose of methadone and alprazolam (also known as Xanax).[1]

---

[1] Methadone is an opiate prescribed for pain management. It is also prescribed for people who are addicted to other opiates, such as heroin, as part of a

¶3 Detective Keith Peterson examined Burrows's cell phone and discovered that on the evening of March 31, 2009, Burrows had sent several friends a photograph of a handful of blue oval pills, white rectangular pills, and a white prescription bottle cap. Detective Peterson also discovered that the last person Burrows called was Zillyette at 3:10 AM, on the morning of April 1, 2009.

¶4 Detective Peterson interviewed Zillyette at the crisis clinic where she had voluntarily committed herself after Burrows's death. Zillyette told him that she and Burrows were friends and had ingested drugs together on a regular basis. On March 31, 2009, she picked up her prescriptions for methadone and Xanax and met Burrows on Larson Hill. She described the Xanax as blue pills shaped like footballs and the methadone as white tablets shaped like tic-tacs. She said Burrows took a picture of the pills in his hand and sent it to some of his friends. She and Burrows took some of the pills then and some later that evening. She tried to call Burrows the next morning and found out later that day that he had died. Detective Peterson prepared a written statement on the basis of the interview, which Zillyette reviewed and signed.[2]

¶5 The State charged Zillyette with controlled substance homicide. Defense counsel moved to dismiss the charge, arguing that the State would not be able to prove the corpus delicti of the crime because there was no evidence independent of Zillyette's statements that she had delivered the drugs to Burrows. The trial court denied the motion to dismiss, ruling that Zillyette's statements were admissible under RCW 10.58.035 and that the State's evidence, if proved at trial, provided substantial corroborative evidence of her statements.

---

methadone maintenance treatment program. Alprazolam is an antidepressant typically prescribed for anxiety or panic disorders.

[2] Following a CrR 3.5 hearing, the trial court ruled that Zillyette was not in custody at the time of the interview and her statements were voluntary.

¶6 At trial, Aaron Knutson testified that he had introduced Zillyette to Burrows and the three of them had ingested drugs together on multiple occasions. Sarah Zillyette testified that she had confronted Burrows and her mother, Brenda, about their drug use on one occasion. Detective Peterson testified to the photograph and call records on Burrows's cell phone, and to his interview with Zillyette. Joshua Dierick and Mitchell Grandorff testified that they both received the photograph of Burrows holding a handful of blue and white pills and a prescription bottle cap on the evening of March 31, 2009. A pharmacist identified the pills in the photograph as methadone and alprazolam. The pharmacist also testified that Zillyette had picked up her prescriptions for methadone and alprazolam on March 31, 2009, and that Burrows did not have a prescription for those medications. Randy Holm, Zillyette's boyfriend, testified that Zillyette came home around 2:00 or 2:30 AM, on the morning of April 1 and told him that she had been "doing pills with Austin on Larson Hill," specifically, her Xanax and methadone pills. Report of Proceedings (Feb. 10, 2010) at 48-49. Holm also testified that Zillyette's prescription bottles had only a few pills left in them the next day.

¶7 The trial court found Zillyette guilty of controlled substance homicide and sentenced her to 55 months of confinement.[3]

## ANALYSIS

### I. CORPUS DELICTI

¶8 Zillyette renews her corpus delicti argument on appeal, arguing that the State failed to provide sufficient independent evidence of the delivery element of controlled substance homicide. We disagree.

¶9 "Corpus delicti" means the "body of the crime" and consists of two elements that the State must prove: a

---

[3] Zillyette had waived her right to a jury trial.

criminal act and a resulting injury or loss. *See State v. Aten*, 130 Wn.2d 640, 655, 927 P.2d 210 (1996); *City of Bremerton v. Corbett*, 106 Wn.2d 569, 573-74, 723 P.2d 1135 (1986). "Proof of the identity of the person who committed the crime is not part of the corpus delicti, which only requires proof that a crime was committed by someone." *Corbett*, 106 Wn.2d at 574. In Washington, a defendant's incriminating statements are not sufficient, standing alone, to establish that a crime took place. *State v. Brockob*, 159 Wn.2d 311, 328, 150 P.3d 59 (2006); *Aten*, 130 Wn.2d at 656. The State must present independent evidence corroborating the defendant's incriminating statement. *Brockob*, 159 Wn.2d at 328; *Aten*, 130 Wn.2d at 655-56. The court may then consider the independent evidence in connection with the defendant's confession and establish the corpus delicti by a combination of the confession and the independent proof. *State v. Lung*, 70 Wn.2d 365, 371-72, 423 P.2d 72 (1967).

¶10 Under RCW 10.58.035,[4] a defendant's incriminating statements may be admissible even when independent proof of the corpus delicti is absent. Our Supreme Court recently held that RCW 10.58.035 addresses only the admissibility of such statements, however, not their sufficiency to support a conviction, and confirmed the rule that " '[a] defendant's incriminating statement alone is not sufficient to establish that a crime took place.' " *State v. Dow*, 168 Wn.2d 243, 252-53, 227 P.3d 1278 (2010) (emphasis omitted) (alteration in original) (quoting *Brockob*, 159 Wn.2d at 328).

¶11 In determining whether sufficient independent evidence supports a conviction, we review the evidence in the light most favorable to the State. *Brockob*, 159 Wn.2d

---

[4] RCW 10.58.035(1) provides, in relevant part:

[W]here independent proof of the corpus delicti is absent, and the alleged victim of the crime is dead or incompetent to testify, a lawfully obtained and otherwise admissible confession, admission, or other statement of the defendant shall be admissible into evidence if there is substantial independent evidence that would tend to establish the trustworthiness of the [defendant's statements].

at 328. The independent evidence need not be sufficient to support a conviction, but it must provide prima facie corroboration of the crime described in the defendant's incriminating statements. *Brockob*, 159 Wn.2d at 328. In other words, the independent evidence must support a " 'logical and reasonable inference of the facts sought to be proved.' " *Brockob*, 159 Wn.2d at 328 (internal quotation marks omitted) (quoting *Aten*, 130 Wn.2d at 656).

¶12 The criminal act at issue here is controlled substance homicide, which a person commits by unlawfully delivering a controlled substance to another person who subsequently uses the controlled substance and dies as a result. RCW 69.50.415. Zillyette argues that the State failed to produce sufficient independent evidence of delivery, likening this case to *State v. Bernal*, 109 Wn. App. 150, 152, 33 P.3d 1106 (2001).

¶13 In *Bernal*, a 14-year-old boy was found dead of a heroin overdose and the defendant admitted to selling the heroin to him. *Bernal*, 109 Wn. App. at 152. On the basis of this evidence alone, the State charged the defendant with controlled substance homicide. *Bernal*, 109 Wn. App. at 152. The trial court granted the defendant's motion to dismiss, ruling that the State lacked sufficient evidence to prove the corpus delicti of the crime. *Bernal*, 109 Wn. App. at 152. We affirmed, reasoning:

> Excepting [the defendant's] statement, the record shows absolutely nothing about how [the victim] acquired the heroin that caused his death. We can speculate that he acquired it by delivery, by stealing it, by finding it, or by some other means— but the record gives *no* rational basis for inferring one possibility over the others.
>
> . . . There is simply no evidence, independent of [the defendant's] statements, from which to infer how [the victim] obtained heroin.

*Bernal*, 109 Wn. App. at 154.

¶14 Unlike *Bernal*, where the State provided no independent proof of delivery, the independent evidence in

this record establishes a reasonable inference that someone, specifically Zillyette, provided Burrows with the methadone and alprazolam pills that caused his death. The record shows that (1) Burrows and Zillyette were friends and had ingested drugs together on previous occasions; (2) on the afternoon before he died, Burrows sent his friends a photograph of himself holding a handful of pills and a white prescription bottle cap; (3) the pills in the picture were identified as methadone and alprazolam; (4) Burrows did not have prescriptions for those medications but Zillyette did; and (5) Zillyette had filled her prescriptions that afternoon and her prescription bottles were almost empty the next day.[5] This independent evidence supports a reasonable inference that Burrows acquired the methadone and alprazolam from Zillyette, rather than acquiring the pills in some other way. Thus, the State produced sufficient independent evidence of delivery to corroborate Zillyette's incriminating statements and support her conviction for controlled substance homicide. *See Brockob*, 159 Wn.2d at 328; *Aten*, 130 Wn.2d at 656.

## II. Information

¶15 Zillyette also argues that the State failed to allege all of the elements of controlled substance homicide in the information. The information alleged:

> That the said defendant, Brenda J. Zillyette, in Grays Harbor County, Washington, on or about March 31-April 1, 2009 did unlawfully deliver a controlled substance to Austin Burrows in

---

[5] The State argues that we can also rely on the statement of Zillyette made to Holm on the night of Burrows's death that she and Burrows had been taking her methadone and alprazolam pills together. The corroboration requirement does not apply to incriminating statements made before or during the course of an offense. *See State v. Pietrzak*, 110 Wn. App. 670, 680-81, 41 P.3d 1240 (2002); *State v. Dyson*, 91 Wn. App. 761, 763, 959 P.2d 1138 (1998); 1 McCormick on Evidence § 145, at 593-94 (Kenneth S. Broun ed., 6th ed. 2006 & Supp. 2010). But it is unnecessary for us to determine whether Zillyette's statement fits within this exception because there is sufficient independent corroborating evidence here without relying on any of her statements.

violation of RCW 69.50.401, which controlled substance was subsequently used by Austin Burrows, resulting in his death;

Contrary to RCW 69.50.415 and against the peace and dignity of the State of Washington.

Clerk's Papers at 1. RCW 69.50.415(1) provides, "A person who unlawfully delivers a controlled substance in violation of RCW 69.50.401(2)(a), (b), or (c) which controlled substance is subsequently used by the person to whom it was delivered, resulting in the death of the user, is guilty of controlled substances homicide." Zillyette contends that by failing to allege the specific controlled substances that were delivered to Burrows, the State failed to allege a crime.

¶16 Zillyette did not challenge the information at trial. When a defendant challenges the information for the first time on appeal, she must show that she was actually prejudiced by the vague language used in the information, meaning she did not actually receive notice of the charges that she must be prepared to defend against. *State v. Goodman*, 150 Wn.2d 774, 788-89, 83 P.3d 410 (2004). Zillyette does not contend that she was actually misled by the information and expressed no confusion at trial about the specific identity of the controlled substances at issue. Accordingly, we hold that the information was sufficient.

¶17 Affirmed.

WORSWICK, A.C.J., and HUNT, J., concur.