IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 32857-1-III |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JEFFERY ROBERT MAY, | ) | UNPUBLISHED OPINION |
| | ) | |
| Respondent. | ) | |

BROWN, J. — The State appeals the trial court's corpus delicti dismissal of its controlled substances homicide prosecution against Jeffery R. May who confessed to providing methamphetamine to the decedent, Danielle Dunn. The State contends the court erred in ruling his confession was not independently corroborated and erred by applying incorrect legal standards. We disagree with the State and affirm.

FACTS

After meeting earlier in the day, Mr. May brought Ms. Dunn to his motorhome parked in Ben Fromm's driveway. Ms. Dunn was a longtime intravenous drug user. Mr. Fromm saw the couple and noted Ms. Dunn appeared to be "pretty high." Clerk's Papers (CP) at 52. The next morning, Mr. Fromm observed Ms. Dunn was looking a little better. Later, Mr. May ran into Mr. Fromm's home seeking help with Ms. Dunn

because she was not responding. After determining Ms. Dunn was not breathing, Mr. Fromm contacted 911. Medics soon arrived but failed to revive Ms. Dunn. Mr. May told the medical personnel Ms. Dunn had used one half grams of methamphetamine. Ms. Dunn died from "acute methamphetamine overdose." CP at 21.

Officers found a box of unused syringes in Mr. May's motorhome, but no used syringes. Officers did not locate any empty bags, or other containers with trace evidence of methamphetamine. When asked where Ms. Dunn obtained the drug, Mr. May responded, "'I gave it to her.'" CP at 27. He told officers after Ms. Dunn injected the methamphetamine, she became disoriented, started speaking strange, and vomited. Mr. May reported he requested help after she stopped breathing.

Officers arrested Mr. May. During his arrest search, officers found a small bag with a gram of methamphetamine in his pocket. The State charged Mr. May with controlled substances homicide. Mr. May successfully requested dismissal on corpus delicti grounds, arguing the State failed to show sufficient corroborating evidence independent of his confession to prove the charged crime. After an unsuccessful reconsideration request, the State appealed.

## ANALYSIS

### A. Corpus Delicti

The issue is whether the trial court erred in dismissing the controlled substances homicide charge against Mr. May. The State contends the evidence was sufficient to establish the corpus delicti of the crime of controlled substances homicide.

A trial court's pretrial dismissal of criminal charges for failure to make a prima facie case of guilt is reviewed de novo. *State v. Montano*, 169 Wn.2d 872, 876, 239 P.3d 360 (2010). In order to dismiss the State's case under the corpus delicti rule, the court must find insufficient evidence of the corpus delicti to support admission of the defendant's statements into evidence at trial. *State v. Brockob*, 159 Wn.2d 311, 321, 150 P.3d 59 (2006).

"Corpus delicti" means the "'body of the crime'" and must be proved by evidence sufficient to support the inference that there has been a criminal act. *State v. Brockob*, 159 Wn.2d 311, 327, 150 P.3d 59 (2006) (quoting *State v. Aten*, 130 Wn.2d 640, 655, 927 P.2d 210 (1996)). The corpus delicti rule arose from judicial distrust of confessions. *City of Bremerton v. Corbett*, 106 Wn.2d 569, 576, 723 P.2d 1135 (1986). Courts feared confessions would be uncritically accepted by juries, even if evidence showed the admissions were involuntary, coerced, or untruthful. *Aten*, 130 Wn.2d at 656-57. Washington courts may not consider the accused's incriminating statements unless the State establishes the corpus delicti with independent proof. *State v. Ray*, 130 Wn.2d 673, 679, 926 P.2d 904 (1996). "In other words, the State must present evidence independent of the incriminating statement that the crime a defendant *described in the statement* actually occurred." *Brockob*, 159 Wn.2d at 328 (emphasis in original).

We view the State's evidence as true and view all reasonable inferences in the light most favorable to the State. *Aten*, 130 Wn.2d at 658. The independent evidence need not be sufficient to support a conviction, but it must provide "prima facie

corroboration" of the charged crime. *Brockob*, 159 Wn.2d at 328. Prima facie corroboration of a defendant's incriminating statement exists if the independent evidence supports a "'logical and reasonable inference of the facts sought to be proved.'" *Id.* (quoting *State v. Vangerpen*, 125 Wn.2d 782, 796, 888 P.2d 1177 (1995)). In addition to corroborating a defendant's incriminating statement, the independent evidence must be consistent with guilt and inconsistent with a hypothesis of innocence. *Id.*

Here, to satisfy the corpus delicti rule the State must provide independent evidence demonstrating a controlled substance homicide occurred pursuant to RCW 69.50.415(1). "A person who unlawfully delivers a controlled substance . . . which controlled substance is subsequently used by the person to whom it was delivered, resulting in the death of the user, is guilty of controlled substances homicide." RCW 69.50.415(1). Methamphetamine is a controlled substance. RCW 69.50.206(d)(2). In a controlled substance homicide case, "the corpus delicti rule requires that the State produce evidence, *independent of the accused's statements* sufficient to support a finding that the charged crime was committed by someone." *State v. Bernal*, 109 Wn. App. 150, 152, 33 P.3d 1106 (2001) (emphasis in original).

The State's evidence, independent of Mr. May's confession, shows Ms. Dunn was a regular intravenous drug user who recently met Mr. May. She appeared high when she arrived at Mr. May's motorhome the evening before her death. No used syringes or empty bags containing traces of methamphetamine were found in Mr. May's

4

trailer. Officers located a small bag containing one gram of methamphetamine in Mr. May's pocket, but no empty bags. Nothing connects the pocketed methamphetamine to the methamphetamine in Ms. Dunn's system.

In *Bernal*, Division Two of this court affirmed the lower court's dismissal of a controlled substances homicide charge based on similar facts. There, the decedent died of a heroin overdose. The defendant lived in the same trailer park as the decedent. *Bernal*, 109 Wn. App. at 152. Ms. Bernal told officers she provided drugs to the decedent a few days earlier. *Id.* The *Bernal* court found without the defendant's statement, the State had merely proved one of the two elements of the corpus delicti – that heroin had resulted in the decedent's death. *Id.* at 153. Thus, the court found the corpus delicti rule had not been satisfied, and affirmed the trial court's dismissal of the charge. *Id.* at 154. Notably, the decedent was a "naïve" intravenous user based on the lack of track marks on his body. *Id.* at 157 (Bridgewater, J., dissenting).

By contrast, in *State v. Zillyette*, 163 Wn. App. 124, 256 P.3d 1288 (2011), *rev'd on other grounds by* 178 Wn.2d 153 (2013), Division Two held the corpus delicti rule was satisfied for controlled substances homicide where, the defendant and decedent were friends and had used drugs together previously; the day before he died, the decedent sent his friends a picture of himself holding a handful of pills and a prescription bottle cap; the pills in the picture were identified as those with which he later overdosed; the decedent did not have a prescription for the pills but the defendant

did; the defendant had filled her prescriptions that afternoon, and the defendant's prescription bottles were nearly empty the next day. *Id.* at 131.

Mr. May's case is clearly distinguishable from *Zillyette* because no evidence shows a prior relationship between Mr. May and Ms. Dunn, prior drug use together, and no connection between the methamphetamine found on Mr. May and the drug causing Ms. Dunn's death. Here, Ms. Dunn was a regular intravenous drug user, who first appeared very high when arriving at Mr. May's home not long before her death. The trial court correctly reasoned it would need to speculate on her narcotics source, a level of proof far below the required prima facie showing required. Assuming the truth of the State's evidence, insufficient corpus delicti exists independent of Mr. May's statement. Thus, our facts are more analogous to *Bernal* than *Zillyette*; the State failed to produce sufficient evidence independent of Mr. May's statement to meet its burden. *Aten*, 130 Wn.2d at 660-61. We next turn to the State's standard of proof arguments.

First, "[t]he State has the burden of producing evidence sufficient to satisfy the corpus delicti rule." *State v. Pineda*, 99 Wn. App. 65, 77, 992 P.2d 525 (2000). As discussed, prima facie corroboration of a defendant's incriminating statement exists if the independent evidence supports a "'logical and reasonable inference'" of the facts sought to be proved. *Brockob*, 159 Wn.2d at 328 (quoting *Vangerpen*, 125 Wn.2d at 796). The court here specifically stated, "The independent evidence need not be of such character as would establish the corpus delicti beyond a reasonable doubt or even a preponderance of the evidence. It is sufficient if it is prima facie—if prima facie

6

establishes the corpus delicti." Report of Proceedings (RP) at 17. In ruling, the court orally stated it used the "logical and reasonable inference" standard. RP at 23. Because the court specified the standard it was using and nothing in our record suggests it applied a different standard, the State incorrectly asserts the court held the State to a higher burden of proof.

Next, the State concedes the court did not specifically state it applied a multiple hypothesis test, but suggests the court employed "a tacit application of that rule." Appellant's Br. at 16. Historically, the multiple hypothesis rule is "that in order to sustain a conviction on circumstantial evidence, the circumstances proved by the state must not only be consistent with each other and consistent with the hypothesis that the accused is guilty, but also must be inconsistent with any hypothesis or theory which would establish, or tend to establish, his innocence." *State v. Gillingham*, 33 Wn.2d 847, 854, 207 P.2d 737 (1949). In the context of the corpus delicti rule, however, our Supreme Court has held if the State's evidence supports both a hypothesis of guilt and a hypothesis of innocence, the evidence is insufficient to corroborate a defendant's statement. *Aten*, 130 Wn.2d at 660-61. Stated differently, "if the State's evidence supports the reasonable inference of a criminal explanation of what caused the event and one that does not involve criminal agency, the evidence is not sufficient to corroborate the defendant's statement." *Brockob*, 159 Wn.2d at 330. Here, no evidence in this court's record shows the court required the State to disprove any reasonable hypothesis of innocence. Rather, the State's evidence shows a possibility

No. 32857-1-III
*State v. May*

Ms. Dunn, an experienced drug user, obtained methamphetamine independent of Mr. May and a possibility Mr. May provided the lethal drug. These competing theories are insufficient to corroborate Mr. May's statement. Without more, the corpus delicti rule was not satisfied.

Given our analysis, we conclude the court used the appropriate legal tests; the State did not meet its burden to provide independent evidence to corroborate Mr. May's confession. The trial court properly dismissed the charge.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Brown, J.

WE CONCUR:

Siddoway, C.J.

Fearing, J.

8